## WILLIAM A. MINOR *vs.* ELI F. ROGERS, EXECUTOR.

A widow with a considerable estate and no children deposited in a savings bank $250 in her own name as trustee for *W*.  *W* was a boy thirteen years of age, whose parents were near neighbors and friends, and who was accustomed to do errands for her, being almost daily at her house for the purpose, she often

giving him presents in return. Shortly after making the deposit she told the boy's parents that she had deposited that amount in the savings bank for their son, and again alluding to it remarked that *W* would need it for his education. She kept the bank book herself, and two years thereafter drew out a part of the money and a year later the balance with accrued interest, signing receipts in her own name, and appropriating the money to her own use. She died four years later, leaving a will in which no allusion was made to the deposit and nothing was given to *W*. It was found by the court below that at the time she made the deposit she intended to make a gift of the sum to *W*, to take effect either then or at some future time. Held that she made a complete gift at the time of the deposit and could not afterwards revoke it. [Two judges dissenting.]

And held that the trust was to be regarded upon the facts as only for *W's* minority, and that upon his becoming of age the legal title would vest in him without any further act to end the trust.

Whether a legal title to the money did not instantly vest in *W* upon the donor's drawing out and appropriating it in violation of the trust: *Quære.*

ASSUMPSIT for money had and received; brought to the Court of Common Pleas in New Haven county and tried upon the general issue closed to the court. The court found the following facts:

For sixteen years prior to her death, which occurred in the year 1868, Mary Daniels lived as a near neighbor to the plaintiff's father, in the town of Branford. She was a widow, having a large estate and no children, and left property to the amount of about $35,000. She was intimate with and friendly to the family of the plaintiff's father, and was in the habit of employing the plaintiff to run of errands, and often took him with her when she rode out. He was at her house almost daily, doing errands for her, and she made him several presents of clothing, jewelry, &c.

On the 30th day of March, 1861, the plaintiff came with her to New Haven. She inquired of him particularly about his middle name, and leaving him in a store with directions to wait for her, she visited the New Haven Savings Bank, (where at that time and for a year or two after she had no deposit except the one now to be mentioned), and deposited in the bank $250, receiving the usual bank deposit book, made out to " Mary Daniels as Trustee of William A. Minor."

The semi-annual interest was afterwards added upon the book up to January, 1863, and again up to January, 1864.

On the 15th of June, 1863, she drew out $150 of the money, and on the 18th of May, 1864, she drew $130.15, the balance of principal and interest then due, and signed a receipt in the book in her own name, without the addition of trustee, and then delivered up the book to the bank. The book up to that time had always been retained in her own possession. In her will she disposed of all her estate, making no mention of the plaintiff or of the deposit.

A few days after making the deposit she informed the plaintiff's father that she had deposited $250 in the savings bank for Willie, meaning the plaintiff, and on two other occasions during the same summer she alluded to the fact in conversation with the plaintiff's parents, and that he would need it for his education. He was at that time about thirteen years old and residing with his parents.

The plaintiff knew nothing of the deposit until after the death of Mrs. Daniels, and no further allusion was made to it between her and the plaintiff's parents during her life. It did not appear for what purpose she drew the money out, nor what she did with it. The defendant is her executor, and the present suit is brought to recover the money with interest.

The plaintiff claimed that these facts constituted a gift to him, taking effect on the 30th day of March, 1861, never revoked in fact and irrevocable in law, and that he was entitled to recover what the sum would amount to, compounded semi-annually by the law of the savings bank, or at least the amount drawn out by Mrs. Daniels with interest at six per cent. thereon to the date of judgment.

The defendant claimed that upon the facts there was no effective gift; that in law Mrs. Daniels had, notwithstanding the deposit, the right to revoke her intended bounty, and that by withdrawing the deposit in her own name she must be deemed to have revoked it so that it never became effective.

The court found that at the time she made the deposit

she intended to give the sum deposited to the plaintiff. There was no evidence, other than the above facts, to show whether she intended it as a gift to take full effect at that time or at some future time.

If such deposit was sufficient in law to make the gift effective and complete, then the court found that the gift then and there became effective, and vested the ownership in the plaintiff; otherwise not. If the gift was revocable, and the withdrawal of the deposit in her own name without any further declaration with reference thereto was sufficient to constitute a revocation, then the court found that it was so revoked by Mrs. Daniels during her life, and before it had taken effect.

Upon these facts the case was reserved for the advice of this court.

*Wright* and *Hicks*, for the plaintiff.

1. The deposit of the money in the savings bank was an executed gift, and by such deposit it became absolutely the property of the plaintiff. *Grangiac* v. *Arden*, 10 Johns., 293; *Millspaugh* v. *Putnam*, 16 Abb. P. R., 380; *Grover* v. *Grover*, 24 Pick., 261; *Gardner* v. *Merritt*, 32 Maryl., 78; *Penfield* v. *Thayer*, 2 E. D. Smith, 305; *Howard* v. *Windham County Savings Bank*, 40 Verm., 597. The court finds that, at the time she made the deposit, she intended to give the sum deposited to the plaintiff. She had the pecuniary ability to make the gift, for she was a widow, having a large estate but no children. She had an adequate motive. She was on intimate relations with the plaintiff's family, and he was her favorite helper, and cherished friend, and she had an adequate purpose in providing for his education. Her fixedness of purpose is shown by the publication of what she had done to his parents, the persons most interested in the welfare of the boy, and who, as his guardians, accepted the gift in his behalf. *Camp's Appeal from Probate*, 36 Conn., 88. Here, then, we find that the defendant's testatrix had the ability to give, an adequate motive for giving, a definite object to be accomplished by the giving, a fixed

and continuing purpose to make the gift effectual, and, above all, an intention to consummate the gift.

2. The deposit of the money in the manner found by the court was in law a delivery of the gift, and nothing more remained to be done to transfer the money. It was not necessary to deliver the book to the boy, or give him charge of it. 1 Swift's Dig., 439. The gift was not a *res* or even money, and therefore was not capable of manual delivery. It was a *credit* in a savings bank, for a definite purpose, to wit, his education. It was a credit to the plaintiff, in trust, in her name; and he alone had the beneficial interest. Any other mode of consummating the gift would have defeated the object intended by. the giver.

3. A gift *inter vivos* once consummated, is as irrevocable as a grant for a valuable consideration. 2 Taylor's Ev., § 894. She reserved no right to revoke. Once a trust, always a trust. Perry on Trusts, § 104.

*Morris*, for the defendant.

1. There was not a completed or effective gift of the money in question. The record shows that Mrs. Daniels deposited her own money in her own name, as trustee for Wm. A. Minor. She took the deposit book into her own possession and kept it while the deposit remained in the bank, and never communicated the fact of the deposit to the plaintiff. This did not constitute a gift. To have completed the gift there must have been an actual delivery. There was no delivery. The donor must have parted not only with the possession, but with the dominion of the property in order to complete the gift. The donor in this case did not part with either the possession or dominion of the property. The mere intention or naked promise to give does not constitute a gift. But in this case it is not found that there was even a promise to give. There exists the *locus pœnitentiæ* so long as the gift is incomplete. 2 Kent Com., 438; 1 Parsons on Cont., 201; *Geary* v. *Page*, 9 Bosw., 290, 298; *Camp's Appeal from Probate*, 36 Conn., 88; *Hughes* v. *Stubbs*, 1 Hare, 476; *Lyte* v. *Perry*, 1 Dyer, 49a.

2. If Mrs. Daniels, at the time of making the deposit, intended to make a gift to the plaintiff, she reserved to herself the power of revocation. She deposited the money in her name, as trustee for the plaintiff. She kept the bank book in her own possession. She did not communicate the fact of the deposit to the plaintiff. She manifestly intended to keep the deposit under her own control, and to have the right of revoking the gift if she saw fit. She exercised this right. The record shows that she drew all of this money out of the bank in about three years after it was deposited, and about seven years before she died. And when she drew the money from the bank she signed the receipt for it in her own name, and not as trustee, showing clearly that it was not her intention to keep the trust alive, but to revoke it. She had the right to revoke the gift and she exercised that right. *Witzel* v. *Chapin*, 3 Bradf., 386; *Gaskell* v. *Gaskell*, 2 Younge & Jer., 502.

3. If any trust was intended to be created by such deposit, it was a voluntary trust. Such a trust must be clearly defined, so that a court can see what is requisite for its due execution. But there is nothing to show when this trust fund was to be paid to the *cestui que trust*, nor for what purpose. It is true the record shows that after making the deposit Mrs. Daniels informed the parents of the plaintiff of the deposit, and that she said the plaintiff would want it for his education; but the fact also appears by the record that the plaintiff, at the time of the deposit, was about thirteen years of age, and that Mrs. Daniels lived as a near neighbor to the plaintiff's father for about ten years after this deposit was made, and until the plaintiff was about twenty-three years of age, and that it was not in fact used for that purpose. As this was the period of life when the trust would have been used if it was intended for his education, it is evident the trust was not created for that purpose. There is nothing to show that she ever intended that the money should come into the hands of the plaintiff to use as he saw fit. The trust was voluntary; it is uncertain and indefinite, and therefore void. 2 Story Eq. Jur., § 979 *a;*

*Stubbs* . v. *Sargon*, 2 Keen, 255 ; *Harrison* v. *McMennomy*, 2 Edw. Ch. R., 251.

4. An action of assumpsit is not the proper remedy. If there had been a completed and unrevoked gift the legal title would have vested in the trustee, and upon her death in her executor. The *cestui que trust* cannot maintain an action at law against such executor. The remedy, if any, must be in a court of equity. 1 Chitty Pl. 2, 3, 60.

Park, J. It is found in this case that Mary Daniels deposited the sum of two hundred and fifty dollars in the New Haven Savings Bank for the sole benefit of the plaintiff, and that she did this intending thereby to vest in the plaintiff all the beneficial interest in the deposit. Within a few days thereafter she informed the plaintiff's father of what she had done for the plaintiff, and remarked that he would need the donation to acquire an education. But she made the deposit in her own name as trustee of the plaintiff, and kept the bank book in her possession ; and this gives rise to all the doubt there is in the case, namely, whether the gift was consummated or not. It is evident that she did all that she thought necessary to be done to perfect the gift, and supposed that she had accomplished the object; and the only question is, whether she was successful. If she had made the deposit in the name of the plaintiff alone, or had made some other person than herself trustee for the plaintiff, no question could have arisen regarding the completeness of the gift. But the beneficial interest is as much given as it would have been if either of these modes had been adopted. The deposit is made in the bank for the plaintiff, and the bank is informed of the fact. Here is a delivery of the beneficial interest. No more would have been done if the deposit had been made in the name of a third party for the plaintiff. The trustee in that case would have had nothing more ·than· the bare, naked, legal title, without any beneficial interest whatsoever. That interest would have vested directly in the plaintiff. Can it be said that Mrs. Daniels retained in her possession anything more—anything but the naked legal title, when all the bene-

ficial interest had been as completely given and delivered to the plaintiff, as it could have been if a third party had been made trustee? Suppose she had given the plaintiff a writing to this effect: "I, Mary Daniels, have this day deposited in the New Haven Savings Bank two hundred and fifty dollars in my name as trustee of William A. Minor," would the case be stronger than it is now? She substantially so declared to the bank when she made the deposit, expecting they would make a record of it for the benefit of the plaintiff, which they did make. She substantially so declared to the father and natural guardian of the plaintiff, a short time after, expecting, no doubt, that he would inform the plaintiff of what she had done for him.

It is true that a mere naked promise to give personal property, or a declaration by a party that he gives such property without performing some act delivering or conveying the property to the donee, would not be sufficient. But here the donor took the sum of money, and deposited it in the bank where she had no funds of her own for the purpose of transferring all the beneficial interest in the same to the plaintiff, and although she used her own name as trustee of the plaintiff, still the act had the same effect as depositing it in the plaintiff's name, in every respect except the legal title. Surely here are acts done for the purpose of transferring the beneficial interest in the chose in action to the plaintiff.

If the deposit had been made in the name of the donor alone, then it would have been necessary, in order to perfect the gift, for her to have given the plaintiff a writing conveying the gift, or an assignment of the bank book on which the deposit was entered, as in the case of *Camp's Appeal from Probate*, 36 Conn., 88.

But here the conveyance was made of the chose in action at the time the deposit was made, and it so appears on the books of the bank, and on the donor's bank book, which entries she caused to be made at the time of the transaction.

But the defendant relies very much upon the fact that Mrs. Daniels retained possession of the bank book. He considers this act of hers as wholly inconsistent with a perfected gift.

But she could not act as trustee of the chose in action without retaining possession of the book, for it is well known that savings banks require the presentation of such books whenever any action on their part is asked for with regard to the deposits in the banks. She retained possession therefore, because the deposit was made in her name as trustee, and not because she had not given the beneficial interest of the deposit to the plaintiff.

The view we have taken of this case is supported by the case of *Gardner* v. *Merritt*, 32 Maryland R., 78. In that case a grandmother, from time to time during a period of five years, deposited various sums of money in a savings bank in Baltimore to the credit of her five grandchildren. The accounts in the bank were entered in the name of each child as a minor, and the deposits were made subject to the order of the grandmother or that of her daughter. The grandmother died, and shortly after her death the daughter, who was the executrix of her mother's will, obtained from the bank all the money that had been deposited to the credit of the grandchildren, and treated it as a part of the grandmother's estate. It was held that the moneys deposited by the grandmother became perfected gifts in the grandchildren, and that the donees were entitled to the several amounts which stood to their credit in the bank when they were withdrawn by the defendant.

The case of *Millspaugh* v. *Putnam*, 16 Abbott's Prac. R., 380, is directly in point. There *C. F.* deposited money in a bank in her own name, and to her own credit, but in trust for *C. F. M.* It was held that this fact raised a presumption that the money deposited was the money of *C. F. M.* and might be so regarded. But even as a gift from *C. F.* to *C. F. M.* the court held the transaction to be sufficiently definite and complete to make the gift absolute and perfect in *C. F. M.* See also the following cases: *Grangiac* v. *Arden*, 10 Johns., 293; *Grover* v. *Grover*, 24 Pick., 261; *Howard* v. *Windham County Savings Bank*, 40 Verm., 597; *Penfield* v. *Thayer*, 2 E. D. Smith, 305; *Parish* v. *Stone*, 14 Pick., 198; *Champney* v. *Blanchard*, 39 N. York, 111.

We think therefore that the gift of Mrs. Daniels to the plaintiff was complete when the money was deposited in the bank, and that consequently she could not thereafter annul the transaction, as she attempted to do.

The defendant further claims that her trust was void for uncertainty, because no time is specified when the plaintiff should enjoy the legal as well as the equitable right to the property. The donor stated that the plaintiff would need the donation for his education, thereby implying that it should be in his hands for that purpose when that time should arrive. At all events it cannot be considered that she intended the trusteeship to continue longer than during the minority of the plaintiff. We see no difficulty in this objection.

Again, it is claimed that the plaintiff cannot maintain this action at law, on the ground that the legal title to the chose in action never vested in him. It will be observed that some three years after the gift was made Mrs. Daniels refused longer to act as his trustee, and thereupon converted his property to her own use. It may well be questioned whether the legal title to the chose in action did not instantly vest in the plaintiff by this wrongful act of hers, inasmuch as no particular formality is necessary to transfer the legal title of such property to one in whom the beneficial interest is already vested. But however this may be, we are satisfied that the legal title vested in the plaintiff when he arrived at majority, for we have seen that the trusteeship was never designed to continue longer than during the plaintiff's minority. When that ended the trusteeship terminated by its own limitation. There was no necessity for its longer continuance. The cases of *Underhill* v. *Morgan*, 33 Conn., 105, and *Camp's Appeal from Probate*, 36 Conn., 88, have some bearing upon this point.

A majority of the court advise judgment for the plaintiff.

In this opinion SEYMOUR, C. J., and FOSTER, J., concurred. CARPENTER and PHELPS, Js., dissented.