RALPH I. PICKERING, *Admr. vs.* JOHN R. HIGGINS, *Admr. et al.*

JULY 7, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is a cause in equity, begun by a bill of complaint that was filed by the administrator of the estate of Olney L. Pickering against the administrator of the estate of J. Everett Pickering, who was the son of Olney L. Pickering, and against the Rhode Island Hospital Trust Company. The subject matter of the suit is the ownership of a savings bank account which, at the death of Olney L. Pickering, was in that bank in the name of J. Everett Pickering, who is generally hereinafter referred to as Everett Pickering and who died about nine years after the death of his father and without having learned of that account, so far as appears. Each of the administrators asserted that the account belonged to the estate of his own decedent.

The cause was heard in the superior court on bill, answer, cross-bill and evidence, the latter being in the form of an agreed statement of facts; and the trial justice filed a decision in which he held the respondent administrator to be entitled to the bank account. A decree was entered accordingly and the cause is now before us on the appeal of the complainant administrator. The material facts set out in the agreed statement are as follows: Olney L. Pickering, on June 16, 1915, deposited the sum of $890.25 in the Mechanics Savings Bank, Woonsocket, Rhode Island, in the sole name of his son J. Everett Pickering, whose whereabouts at that time were not known, intending to make a gift thereof to this son. The bankbook, immediately upon its issuance, was left by Olney Pickering with the bank for

safekeeping. Two additional deposits were made to the same account and no withdrawals were ever made. In December 1928 the Mechanics Savings Bank was absorbed by the Rhode Island Hospital Trust Company with all its accounts and deposits, and the account in question has remained inactive in the possession of the trust company and now amounts to about $2600.

At the time of the original deposit Everett Pickering had been missing for about five years, having left his wife in 1911 after being married three years. Save for a single postcard received in 1914, she had never heard from him, nor had she been able to communicate with him. However, she maintained relations with Olney Pickering, and was accustomed to make periodical visits to the latter's home. Yet she never learned of the deposit in her husband's name until 1922. At that time Olney Pickering handed her a bankbook of an account of $100 which he had opened in his own and her names, and said: "I have already taken care of Everett" and informed her that the bankbook in Everett's name was at the bank for safekeeping, but she could have it if she wanted it.

Two years after this incident, to wit, in March 1924, she received a letter from her husband, Everett, bearing a New York address. She notified Olney Pickering of this fact, and he thereupon turned over to her the bankbook in question with instructions to send it to Everett. Instead of sending the book as she was directed, she sent a letter in which she made no mention of the book. This letter was returned to her undelivered; and it is agreed that Everett never had any knowledge whatever of this deposit in his name.

She retained possession of the bankbook for approximately six months, when, at Olney Pickering's request, she returned it to him, in order that he might have interest credited thereon. At the same time she also returned to him, for a similar purpose, the bankbook standing in both

their names. The latter book he returned to her, but retained the book standing in Everett Pickering's name.

On January 1, 1928, Everett Pickering not having been heard from since 1924, Olney Pickering attempted another disposition of the deposit in question. In a writing bearing that date, he declared that if Everett Pickering was not heard from within six years, the money was to be divided equally among the specifically named children of another son. The writing also contained the statement that the book was being left in the care of Lucy England, a daughter of Olney Pickering. However, the book was found among the effects of Olney Pickering after his death in 1929. Everett Pickering was not heard from within six years from the date of the above-mentioned writing, nor subsequently, until notice was received of his death in 1938.

The same bank account was involved in two previous cases which came before this court, *Pickering* v. *Pickering*, 64 R. I. 112, and *Pickering* v. *Higgins, Admr.*, 69 R. I. 22; but in neither of them was involved the question which is in issue in the instant cause.

The trial justice based his decision herein mainly upon two statements quoted by him from the article on "Gifts" in 28 C. J. 617, at 639, 662. These statements, with which the complainant's attorney says he "has no quarrel," are as follows: "While there must be a delivery and acceptance to complete the gift, it does not necessarily follow that the delivery must be made directly to the donee, but the delivery may be to a third person for the benefit of the donee. Where a delivery is thus made to a third person, the question whether the gift was thereby completed without actual delivery to the donee depends entirely upon whether the person to whom the property is delivered receives it as the donor's agent or as trustee for the donee.

"Where the donor deposits money in the name of the donee and delivers to him, or to a third person for him a pass book therefor . . . the transaction is a valid gift *inter vivos*."

At the end of the agreed statement of facts hereinbefore set forth and above the signatures thereto of the attorneys for the contesting parties, is the following paragraph: "Upon the above statement of facts, the question has arisen whether Olney Pickering made a complete and irrevocable gift of the deposit standing in his son Everett's name by handing the passbook to the latter's wife with instructions to send it to him, or whether he still maintained title and control of said deposit and the intended gift failed for want of completion."

This paragraph is not a statement of one of the *facts* agreed upon by these attorneys, but is only a statement of a question of law as to which those attorneys differed; and although the trial justice based his final decision upon an affirmative answer to the question thus stated, we are not therefore bound to treat it as the decisive issue in the case. On the contrary, we are convinced that before discussing that question we should decide, on the *facts* stated, whether Olney Pickering had made a valid gift to his son Everett of the bank account in question by depositing money in the Mechanics Savings Bank to the credit of this son, having the book which represented the deposit issued so as to make the money payable on Everett's order and leaving the book in the custody of the bank for the benefit of Everett.

*In Howard, Admr.* v. *Savings Bank,* 40 Vt. 597 (1868), the plaintiff's intestate, Almira Goodell, deposited of her own money in the defendant bank $220 in the name of Adaline F. Brown, her niece, and received a deposit book upon which the treasurer of the bank made the following entry: "1864, No. 530. *Adaline F. Brown* deposited $220." The latter died in May 1865 and Almira Goodell died during the next August. Immediately after the latter's death the deposit book was found among her effects and a little later came into the hands of the plaintiff as administrator of her estate. He demanded from the bank the amount due thereon; and the husband of Adaline Brown also demanded from the bank that amount as having belonged to his wife

at the time of her death. Under the circumstances the bank refused to comply with either demand and this action was brought to determine the ownership of the deposit.

There was no evidence that Adaline Brown in her life-time had any knowledge of the deposit or that her husband had any such knowledge until after the decease of Almira Goodell. He was made a defendant in the case. At a jury trial the trial justice directed a verdict for the defendants and the case was heard in the supreme court on the plaintiff's exception to this direction and the exception was overruled.

In its opinion, at page 599 of the report, the court said that it appeared "that both Almira Goodell and the bank at the time the deposit was made, treated it as made by Adaline F. Brown and as her property." The court said also that the treasurer of the bank made in her name a duplicate of the entry in its books.

Then follows in the opinion this language: "The presumption is that all this was done by and under the direction of the donor, and intended by her as evidence of a perfected gift. The bank in virtue of the deposit had the right to regard Adaline F. Brown as the depositor and legal owner of the money. The transaction constituted an agreement, a legal privity between the bank and Adaline F. Brown, by force of which the bank became accountable to her and to no other person; she thereby became bound by the by-laws and regulations of the corporation in respect to the deposit, after which the donor had no power to recall the gift, and it is not claimed that she ever attempted to recall it."

The court said also that the plaintiff's counsel insisted that the deposit book was the evidence of the deposit and was retained by the intestate; and that the bank was liable to pay the deposit to the lawful holder of the book and therefore the gift was never perfected. As to this contention the court said: "It is true that the deposit book is evidence of the deposit, but it is no better evidence than the entry of the deposit in the treasurer's book and retained by him."

Just a few lines farther on, the court said that the deposit "was evidence only that Adaline F. Brown had deposited $220 in the defendant bank, but the book, in the hands of Almira Goodell, the defendants knowing as they did, the origin and character of her possession of it, was no evidence to the defendants that she had any interest in or right to the deposit. The possession of the book alone, gave the intestate no power or authority to control the deposit or to interfere with it." At page 601 the court said that there was no evidence "that she, at any time after the deposit, made any claim against the bank for the money, or that the bank ever recognized any liability to her on account of the deposit. We are of the opinion that the plaintiff's intestate had no interest in the deposit at the time of her decease."

That case is cited with evident approval in *Ray* v. *Simmons*, 11 R. I. 266 (1875), a similar case except that therein the deposit in a savings bank was made by the depositor in his own name as trustee for the plaintiff; and a book thus describing the account was issued to the depositor. He handed it to her and she then returned it to him; and he kept it until his death. This court held that there was a valid trust for her benefit.

In *Minor* v. *Rogers,* 40 Conn. 512 (1873), a widow with a considerable estate and no children deposited $250 in a savings bank in her own name as trustee for a boy thirteen years old, whose parents were near neighbors and friends of hers, and told these parents what she had done and that he would need the money for his education. Later on, having retained the book, she drew out all the money covered thereby and spent it for her private purposes. It was held by the court that a trust was established for the benefit of the boy and that he was entitled to recover from her estate all that money with bank interest thereon. In the opinion the case of *Howard, Admr.* v. *Savings Bank, supra,* and other similar cases, including *Gardner* v. *Merritt,* 32 Md. 78 (1869), are cited with evident approval.

In the latter case Mrs. Merritt from time to time over a period of five years deposited in a savings bank various sums of money to the account of each of her five grandchildren, subject to her order or that of her daughter. Soon after the death of the grandmother this daughter, who was the executrix of the will of the former, drew out all the money that had been thus deposited and proceeded to treat it as part of the estate. It was held that the deposits were perfected gifts and that the money belonged to the grandchildren.

The case of *Minor* v. *Rogers, supra,* was cited with approval and quoted from in the opinion in the case of *Martin.* v. *Funk,* 75 N. Y. 134, (1878). In the latter case the intestate, Mrs. Boone, deposited in a certain savings bank $500, declaring at the time that she wanted the account to be in trust for Lillie Willard, who was the plaintiff in the case. The account was so entered, and a passbook was delivered to the intestate which contained these entries: "The Citizens' Savings Bank in account with Susan Boone, in trust for Lillie Willard. 1866, March 23. $500." The latter was then eighteen years old and was a distant relative of the intestate.

The intestate retained possession of the passbook until her death in 1875 and plaintiff was ignorant of the deposit until after that event. The money meantime remained in the bank, with the accumulated interest, until the death of the intestate, except that she drew out one year's interest. The action was brought against the administrator of her estate and the bank for the delivery of the passbook and the recovery of the money.

The court held that a valid trust was created for the benefit of the plaintiff. Beginning at the bottom of page 137 the court says: "The act constituting the transfer must be consummated, and not remain incomplete, or rest in mere intention, and this is the rule whether the gift is by delivery only, or by the creation of a trust in a third person, or in creating the donor himself a trustee. Enough must

be done to pass the title, although when a trust is declared, whether in a third person or the donor, it is not essential that the property should be actually possessed by the *cestui que trust,* nor is it even essential that the latter should be informed of the trust." The court in its opinion thoroughly discusses the law applicable to such a trust and says at the top of page 138: "Enough must be done to pass the title . . . ."

The court in *Martin* v. *Funk,* on page 139, cites the case of *Ray* v. *Simmons,* 11 R. I. 266 (1875) in which, as above stated the supreme court of this state cited, with evident approval, *Howard, Admr.* v. *Savings Bank,* 40 Vt. 597, *supra.* In *Ray* v. *Simmons* this court also cited, with evident approval, the case of *Wheatly* v. *Purr,* 1 Keen 551, saying with regard to it that therein "the settlor instructed her banks, with whom she had a deposit of £3,000, to place £2,000 in the joint names of the plaintiffs and her own, as trustee for the plaintiffs. The sum of £2,000 was entered by the bankers in their books to the account of the settlor as trustee for the plaintiffs, and a promissory note given for it payable to the settlor trustee for the plaintiffs, or order, fourteen days after sight. A receipt for this note was signed by the settlor and given to the bankers. The trust was held to be effectually created. In our opinion, the case is not distinguishable from the case at bar. Indeed, the case at bar is stronger in that notice of the trust was communicated to the *cestui que trust.*"

In *Davis* v. *Ney,* 125 Mass. 590 (1878), Mary Ney, on September 24, 1875, had six separate deposit accounts in a certain savings bank for which she had six bankbooks. On that date, by an assignment, she assigned these deposits and delivered the bankbooks therefor to the treasurer of the bank, the consideration being that he would draw for her whatever she wanted during her life and the balance, if any, left at her death was to be paid by the treasurer to her son. The son was not informed of this agreement until after her decease. After her decease the question was

raised as to the ownership of this balance and it was held that it belonged to the son, a trust for his benefit having been created. See also *Jones* v. *Nicholas,* 151 Iowa 362 (1911), and cases cited therein, and *Streeper* v. *Myers,* 132 Ohio St. 322, 7 N. E. 2d 554 (1937).

. The attorney for the complainant in the instant case mainly relies, in his brief, on *Sessions* v. *Moseley,* 4 Cush. 87 (1849) and *Flaherty* v. *O'Connor,* 24 R. I. 587 (1903), in which the former case is relied upon and quoted from. But in neither of those cases was a deposit in a savings bank account by one person in the name of another person involved; and in our judgment neither of those cases is of any assistance in the determination of the vital issue in the instant case, as we view it. Nor, in our opinion, is any other case which is relied on by the complainant's attorney.

In the instant case we are of the opinion that, on principle and according to by far the greater weight of authority, the father, in depositing $890.25 in the Mechanics Savings Bank in Woonsocket, and therewith opening an account for that sum in the name of and payable to his son J. Everett Pickering and in having the bankbook made out accordingly and leaving the book in the possession of the bank for his son, so that the latter could get it at any time by identifying himself and then use it in drawing money from the account, created a valid trust for the benefit of the son, with the bank as trustee.

We are also of the opinion that as the trust was not subject to any condition to be performed or satisfied by the son, there is no necessity of showing that he ever assented to the trust or even learned of it during his lifetime.

The conclusion that such a valid trust was created is also supported by the fact that the father told the son's wife, not long after the deposit was made, that he had already taken care of the son. And his action, taken when he learned that she had received a letter from the son, in getting the book from the bank and delivering it to her for the purpose of having her send it to the son, was fully con-

sistent with a belief by the father that he had already created a valid trust in the son's favor.

Also his action, taken much later, in getting the book from her in order to have accumulated interest credited thereon by the bank was fully consistent with such a belief. Moreover, the fact that, so far as appears, he never drew or tried to draw any money from the account indicates that he regarded it as being in trust for the son.

It is true that very much later he tried to make some other disposition of the fund. But this might well have been due to a belief that his son was dead; and it cannot be given any appreciable weight against a finding that a valid trust in the son's favor was created by the original deposit.

In view of all the facts set forth in the agreed statement, we are of the opinion that the final conclusion arrived at by the trial justice in his decision was correct, though not for the precise reason given by him; and that therefore the final decree entered thereon in favor of the respondent administrator should be affirmed.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*John J. Mee,* for complainant.

*Higgins & Silverstein, John R. Higgins,* for respondents.