WILLIE SWAN, by her next Friend, CATHERINE SWAN, and others, *vs.* WILLIAM F. FRICK, and others.

## *Voluntary Trusts.*

Courts will not establish a trust on the voluntary agreement of the settlor, made without consideration, when at the time the settlor contemplated some further act for the purpose of making it complete.

APPEAL from the Superior Court of Baltimore City, in Equity.

Robert Swan died 6th of August, 1835. By his will he named James Swan and Dr. Smith, his executors, and made them devisees in trust, for certain specified purposes, of all his estate, charging it with the payment of his debts, and authorizing them to sell the real estate for that purpose. In the will he directed " that at the arrival of" his " sons to the age of twenty-one, then all the trusts, charges, and all the rights and powers of said trustees, and the trust and charge aforesaid for the support of my said wife shall cease and determine." The executors accepted under the will, and James Swan acted as executor and trustee. In this capacity he sold portions of the real estate to pay the debts, and stated certain accounts with the Register of Wills, by which he claimed to have made large over-payments for the estate from his own funds.

Subsequently, in 1851, after all of the children of Robert Swan had attained the age of twenty-one, James Swan filed a bill, for himself and other creditors, to have the residue of the real estate of Robert Swan, deceased, sold for the payment of the debts still remaining unpaid. A decree was thereon passed appointing Thomas Perry to sell certain parcels of land. The sale was made accordingly and reported to the Court, James Swan being named as purchaser in the report. The sale was duly ratified by the Court. Before the deed of

Swan, *et al. vs.* Frick, *et al.*

conveyance was made by the trustee, James Swan died. His devisees, the appellees, then filed a petition in the cause asking that the trustee be directed to convey to them as such devisees. An order to this effect was made and the deed was executed in pursuance thereof.

Some time afterward a bill was filed by the appellants citing these facts, and charging, among other things, that James Swan, being a trustee, could not purchase at the sale of the trust property; that the sale was for an insufficient consideration; that the purchase made by James Swan was for and on behalf of and as agent for the appellants, descendants of Robert Swan; and that James Swan held the property in trust for the appellants. The evidence to show that James Swan made the purchase for the appellants was contained in certain letters which are sufficiently set out in the opinion of the Court.

The Court below dismissed the bill, and from this decree the present appeal was taken.

The cause was argued before BARTOL, C. J., BRENT, MAULSBY, MILLER and ROBINSON, J.

*Jervis Spencer* and *Wm. Schley,* for the appellants.

There was a plain declaration of a trust at the time of the purchase, and confirmed afterwards by the bidder, one of the defendants in this case, the son and agent of James Swan. The telling of the attorney of the infant complainant, that he bid to save the property for her, very naturally put him off his guard and prevented his taking the necessary steps to prevent the sacrifice of the property. If any consideration were necessary, (but it was not,) this was a good consideration, and it would be inequitable to deprive the complainants of the benefit of the assurances thus given. 1 *Greenleaf's Ev.,* sec. 322; *Lewin on Trusts,* 30, 44.

As respects this property, Mr. Swan had an express trust under the will; but even if the doctrine, in case of an express

trust, do not apply, still it is a clear case of constructive trust; and the Statute of Limitations cannot apply, certainly not as to Willie Swan, nor as to any of the appellants. *Hill on Trustees,* 264; *Wedderburn vs. Wedderburn,* 2 *Keen,* 722.

*E. Wyatt Blanchard* and *Wm. F. Frick,* for the appellees.

ROBINSON, J., delivered the opinion of the Court.

No question can arise, we think, in regard to the period of time fixed for the termination of the trusts created under the will of the late Robert Swan. The testator expressly declares "that at the arrival of all my sons to the age of twenty-one, then all the trusts, charges, and all the rights and powers of said trustees, and the trust and charge aforesaid for the support of my said wife shall cease and determine," and there is nothing to be found in the will either precedent or subsequent to this provision, from which it can be inferred that the testator intended under any circumstances that the trusts should continue beyond the period thus specifically designated.

The purchase by James Swan of the real estate mentioned in the proceedings was subsequent to this time, that is after the arrival at the age of twenty-one years of the three sons of Robert; and it cannot, therefore, be assailed on the ground of any supposed relation of trustee and *cestui que trust.* This view makes it unnecessary to decide, whether the complainants are precluded from relying on this objection, by the decree of the Circuit Court of Allegany County, under which the property was sold.

But it was also urged, that there was a plain declaration of a trust at the time of the purchase, and confirmed afterwards by John Swan, one of the defendants, the son and agent of James Swan. The only evidence in support of this alleged trust is to be found in a letter from John Swan to his cousin, Robert, dated the 29th of April, 1856, in which he says:

"At the pressing instance of the creditors of John, Charles and yourself, Judge PERRY was forced to offer at public sale,

all the property of your father's estate to satisfy the claims against it. In order to know what residue of property the above parties had thus purchased, I was present to represent my father, and then, for the first time, heard of the sheriff's proceeding against your interest. Before going, however, I saw Mr. William Price, as guardian of Willie, and informed him that it was not my intention to purchase a foot of the property, unless I saw it about to be knocked off for a very song, in which case only, I would purchase ; and that whenever he could effect a sale, or I could effect one, at proper prices, all excess should go to the rightful owners, as I did not desire or intend to speculate upon my own connections, and that, therefore, in buying I was really rendering a service, by keeping the property for them, rather than suffering strangers to wrest it from them." These assurances, we are told, were calculated to mislead. Mr. Price, the guardian of Willie, and to prevent steps from being taken to guard against the sacrifice of the property. How far a trust might be sustained as against John Swan on the ground of fraud, if it appears that relying on his promises the complainants, or their agent, had been induced not to bid for the property, and in consequence thereof, he had been enabled to buy the property at a sacrifice, it is unnecessary for us to determine. These facts are not averred in the bill, nor is there a tittle of evidence to be found in the record from which they can be inferred.

It does not appear that the complainants, or Mr. Price, the guardian, ever intended to bid for the property, or that relying on the promises thus made by John Swan, they forbore to take any steps calculated to prevent a sacrifice of the same. In fact there is nothing in the record to show that the property did not sell for its market value. The sale was reported to the Court by the trustee, and ratified without objection, and it is averred in the answer of John Swan and not denied, that at no time since the purchase has it been possible to resell the land at an advance sufficient to cover the taxes thereon

and the necessary expenses. Stripped then of all badges of fraud, the Court is called upon to establish a trust upon the *voluntary agreement of the settlor*, made *without consideration*, and *who at the time contemplated some further act, for the purpose of making it complete.* It can hardly be necessary to cite authorities to show that under such circumstances a trust cannot be sustained. *Lewin on Trusts*, 81, *marg.; Bayley vs. Boulcott*, 4 *Russell*, 345; *Lister vs. Hodgson*, 4 *Eq. Cases*, 30.

But it was further insisted that this alleged declaration of trust was confirmed by John Swan, and thereby became executed, and the following paragraph in the letter above referred to, is relied on in support of this position:

" Under this understanding with Mr. Price, I became the purchaser of Shandy Hall, at $2 per acre, and the undivided third interest in ' Skipwith,' for about the same, such interest in these tracts as you have not sold yourself, is thus by my act saved to you; but this alone remains to you." Now in answer to this it is sufficient to say, that at the time this letter was written, John Swan had no interest whatever in the property, and that the declaration thus made by him was neither. *authorized, assented to* nor *subsequently ratified* by his father, who had been returned by the trustee as the *purchaser of the property.* It surely will not be contended that a declaration thus made can operate so as to change an *inchoate, incomplete voluntary executory* trust, into an executed trust, binding upon the property in the hands of a party, who neither authorized nor assented to such declaration.

We do not deem it necessary to review the many authorities referred to in the argument, but shall content ourselves by saying that after an examination of them and many others, we have not found a case in which a trust has been established upon the evidence relied on in this record.

For these reasons we think the decree below ought to be affirmed.

*Decree affirmed.*