## IDA E. SNADER et al. *vs.* FIELDER C. SLINGLUFF, Executor.

*Sufficiency of Evidence to Establish a Trust of Personal Property.*

S. E. placed certain railway mortgage bonds in the possession of one R. who signed a paper certifying that he had received the bonds from S. E. "to be held in trust for children of Mary E. The interest collected to be remitted to S. E. The above conditions to be observed and carried out until otherwise ordered and directed." This paper was delivered by R., the trustee, to Mary E. The creator of the trust S. E., lived abroad, and in a letter written by him some years afterwards to Mary E. he referred to the bonds still held by R. and said that the interest thereon "I must have until my death; after that the interest may be paid to you, but I must be assured that * * your life and that of your children." After the death of S. E. the bonds were claimed by his executor. *Held*, that this evidence establishes the creation of a valid trust in favor of the persons named in the written declaration of the trustee.

Appeal from the Circuit Court of Baltimore City (Stock-bridge, J.)

The cause was argued before McSherry, C. J., Fowler, Briscoe, Page, Boyd, Pearce, Schmucker and Jones, JJ.

*George R. Gaither* and *Leon E. Greenbaum*, for the appellants.

It would be perfectly competent to prove this trust by parol evidence. But with every feature of the trust embodied in a written receipt, signed by the holder of the securities, and its delivery to the *cestui que trusts*, which receipt contains a full and complete description of the trust; the only question is *can such a trust be proven by the written declarations of the trustee?*

The written evidence required by the statute may come from the grantor or from the trustee, but not from the *cestui que trust.* *27 Am. & Eng. Ency. of Law*, 50; 2 *Pomeroy, Equity*

*Jurisprudence*, 1007.   In *Gardner* v. *Rowe*, 5 Russell, 258, the trust was declared by the party to whom the property had been conveyed absolutely in favor of a third party, even after the bankruptcy of the grantee, and the Lord Chancellor declared, affirming the Vice-Chancellor : "Assuming the bankrupt to have been a trustee for Mr. Rowe, there was nothing, I think, to prevent him from making a valid declaration of trust, notwithstanding his bankruptcy." *Foster* v. *Hale*, 3 Vesey, 707, decided that a trust was properly proven by letters, and that it was sufficient " if the trust appears in writing under the hand of a person having a right to declare himself a trustee." In *Bates* v. *Hurd*, 65 Me. 180, the party to whom the property was conveyed subscribed and delivered to a third party a receipt, endorsed upon the bond that a portion of the land was held in trust for his mother.   In deciding the case the Court said (after quoting a number of authorities): " From the cases just cited and numerous others, we see that a letter, memorandum or recital subscribed by the trustee, whether addressed to or deposited with the *cestui que trust* or not, or whether intended when made, to be evidence of the trust or not, will be sufficient to establish the trust when the subject, object and nature of the trust, and the parties and their relations to it and each other, appear with reasonable certainty."

In *De Laureneel* v. *De Born*, 48 Cal. 585, the Court says : "The presumption is that the testator would have revoked or modified the will, except for the fact that the defendant, by a solemn instrument, accepted the trust and promised to execute it.   It would be a fraud upon the testator and upon *cestui que trusts* to permit the defendant to repudiate the trust, on the faith of which the estate was devised to him." *Newkirk* v. *Place*, 47 N. J. Equity, 486, says : "Turning now to the question of the value of letters in satisfying the demands of the statute.   It is well settled that the statute does not require that the trust should be created by writing, but only that it be "manifested and proven" by that means, and that this may be done by letters or other writings written long after the trust was created, and that such writings need not be subscribed by

the name of the party to be charged with the trust, but that it is sufficient if the name appears in the proper handwriting in the body of the writing, and that for such purpose initials are sufficient." In *Tanner* v. *Skinner*, 11 Bush, 120, the party sought to be charged signed and delivered a receipt, which was declared to be enforceable as a trust. In *Kingsbury* v. *Burnside et al.*, 58 Ill. 310, the letter of the grantee in an absolute deed was held to constitute a trust. To the same effect are *Rogers' Locomotive Works* v. *Alexander*, 19 Hun. 399; *Packard* v. *Putnam*, 57 N. H. 43; *Smith* v. *Matthews*, 3 De G. F. and J. 139.

Moreover, this question of proving a trust by writing, signed by some other party than the settlor, has been established in this State. *Smith* v. *Darby*, 39 Md. 268; *Reiff* v. *Horst*, 52 Md. 256.

In the case at bar, *both of the parties are claimants.* Although they occupy the technical positions of plaintiff and defendant, yet this is not an action brought against the estate of Samuel Engler. The appearance of the executor in this case is exactly similar to that of the appellants, and it is the duty of both to establish their right to this fund by affirmative evidence. *They are both actors under the bill of interpleader.* And yet the executor of Samuel Engler, and the custodian of his papers and effects, has not produced the slightest evidence of the right of Samuel Engler to the possession of these bonds. There is no evidence whatsoever that Samuel Engler ever had any interest in these bonds, except the receipt of the trustee produced by the appellants, under which it is distinctly stated that these bonds were held, not for the benefit of Samuel Engler, but for the benefit of the appellants. It is true that Samuel Engler reserved the right to revoke and change this trust at any time, but there is no evidence whatsoever that he ever made this change. The Court below seemed to be of the opinion that because the testator reserved the right to change the beneficiary, this was not parting with the dominion over the property such as the law contemplates in the creation of trusts. It is undisputed, however, in this case, that a com-

plete disposition was made by the testator of all of his domin-
ion over these coupon bonds. They were actually transferred
to the trustee, and remained in his possession up to the time
of his death, so far as the record and proof in this case shows.
The power of revocation reserved in a deed of trust to the
grantor is one of the most familiar reservations known to our
law, and such reservations have never been interpreted as af-
fecting in the slightest degree the effective creation of a trust,
provided that the trust fund or property is actually and legally
transferred to the trustee. *Gaither* v. *Williams*, 57 Md. 625;
*Brown* v. *Mercantile Trust Co.*, 87 Md. 377.

*C. C. Rhodes* and *R. Lee Slingluff* (with whom were *F. V.
Rhodes* and *T. Rowland Slingluff* on the brief), for the ap-
pellees.

In this case there is no evidence that reasonably tends to
establish the alleged trust. The only proof is, (*a*) the certifi-
cate or declaration signed by Roop; (*b*) the letters from Sam-
uel Engler; both of which not only fail to show the intent
and its execution, but point directly to the contrary.

(*a.*) This alleged declaration is not the act of Samuel Engler,
the owner of the subject-matter in question, and the *only* per-
son qualified and capable of dealing with it as he pleased, but
is the act of the bailee having in his possession the subject-mat-
ter merely as the agent of the owner and being subject in
every respect to the instruction and orders of his principal.
The acts of Roop were limited and confined by the authority
given him by Engler; as to what this authority was, there is
no evidence. It is not natural to assume that it was that of
an absolute owner to dispose of the bonds as he saw fit. This
assumption is negatived by the last lines, which say, "The
above conditions to be observed and carried out until other-
wise ordered and directed." In the absence of any proof of
Roop's authority, how can it be contended that his principal
is bound by his acts, which can with as much right be assumed
to have been without as within his authority?

This declaration was not delivered by Roop to Samuel

Engler when the bonds were delivered to him, and then by Engler to the *cestui que trust,* but was given directly to the mother of the appellants by Roop.　And there is no evidence that the act of the trustee was known to or authorized by Samuel Engler.

(*b.*) The letters filed as exhibits do not contain one word of the writer's intention to declare, or that he had declared such a trust in favor of the appellants.　In the letter of October 3rd, 1892, which was eight years after the certificate had been signed and delivered by Roop, the language certainly shows that the writer did not consider that he had at that time expressed an absolute intention of creating the trust in favor of appellants.　He says " The interest *may* be paid to you," not will pass or shall pass.　"But I must be assured that all is held safe for your life, and that of your children. How can you assure me?"　There is no evidence that these assurances were ever given, which he was exacting as late as 1892.　Why should he then say, " I must be assured all is held safe for your life and that of your *children*" if he had eight years previously declared a trust in favor of said children?　Under the alleged declaration, how long were the bonds to be held in trust?　Until the children arrived at the age of maturity or for their lifetime?　How and where were they to pass upon the arrival of either or both.　There is a total lack of evidence on this point.　" Courts will not establish a trust on the voluntary agreement of the settlor made without consideration, when the settlor contemplated some further act for the purpose of making it complete."　*Swan* v. *Frick,* 34 Md. 139; *Lloyd* v. *Brooks,* 34 Md. 27.

It is manifest from Engler's letter of 1892 that he contemplated some future action on the part of the *cestui que trust* as well as on his own part, before the bonds were to become the property of the appellants.　Not only must the intention to create the trust be proven in clear and definite terms, but the creator must also divest himself of the title of the subject-matter by placing the same in a trustee or in such a manner that the author of the trust loses all dominion over it, that is,

puts it beyond his power of revocation. 27 *Am. & Eng. Ency. of Law*, 57–58; *Smith* v. *Darby*, 39 Md. 278; *Beaver* v. *Beaver*, 117 N. Y. 421; *Milroy* v. *Long*, 4 DeG. F. & J. 264; *Warringer* v. *Rogers*, L. R. 16 Eq. 340.

Did Engler do this? It is true he did not have the possession of the bonds, but it is not proven that he ever did have them in his physical possession. It is just as inferable that Roop was instructed to purchase the bonds for him as that he received them from him. All the evidence, the letters as well as the certificate, proved conclusively that Engler retained the power of changing the conditions of the trust and as late as 1892 considered that he had the right to do with them as he saw fit, regardless of the trustee or the *cestui que trust.* This violates one of the cardinal rules to be observed in the creation of a perfect trust. "The intention of the settlor to divest himself of the legal estate must be consummated and executed or the Court will not enforce the trust." 1 *Perry on Trusts*, 100.

Engler never considered that he had placed these bonds beyond his control and dominion, and consequently there was no previous intention on his part to do so. If there was no intent there could be no execution of that intention. Equity will not interfere to establish against a settlor a voluntary trust which is incomplete and imperfect. And the trust is equally incomplete and imperfect, whether there has been a sufficient declaration of trust, but no transfer of the property to the intended trustee, or a good transfer of the property, but no sufficient declaration. *Hill on Trusts*, 129, 130; *Antrobus* v. *Smith*, 12 Ves. 39; *Borum* v. *King*, 37 Ala. 606.

There being no evidence of intent and no declaration from the creator or settlor, there can be no trust unless the declaration of the trustee Roop can be said to supply both. No authority was cited below, nor can we find any that goes so far as to hold that mere declaration of the trustee, although in possession of the subject-matter, is sufficient to create a trust in property belonging to others. Declarations of trustees have been held binding as against themselves in two

classes of cases. *First.* Where the author and trustee are
one and the same, and he declares himself to be the holder of
property for specific trusts. *Secondly.* As against the trustee
to impress upon the subject-matter of the trust the fact that
it is trust property. If trustees could, when simply in pos-
session of property, declare the terms of the trust upon which
it was held, they could likewise change at any time, to suit
their own caprice, the beneficiaries or any of the terms of the
trust. Any bailee, could, under similar facts and circum-
stances by collusion with the *cestui que trust*, impress upon
property in his possession a trust which the true owner thereof
could not defeat or change.

BRISCOE, J., delivered the opinion of the Court.

The question which is raised on the record in this case
is presented by an interpleader proceeding, and was in-
stituted to establish the ownership of the proceeds of certain
bonds under a declaration of trust alleged to have been made
by a certain Samuel Engler, a resident of Paris, France. It
will be necessary for a proper understanding of the case to
briefly state the material facts as disclosed by the pleadings
and evidence as upon these will rest the decision of the case.

Mr. Engler was a native of Carroll County, Maryland, but
more than twenty-five years prior to his death was a resident
of Paris. He died in the year 1894 leaving a valuable estate
which he disposed of by last will and testament. The fund
here in controversy was derived from a sale of certain coupon
bonds which is conceded to have been the property of Sam-
uel Engler, the alleged settlor, and which were delivered by
him to the trustee about ten years before his death. This
fund is claimed on the one hand by the appellee, the executor,
as a portion of the undisposed estate of the testator under
the will, and on the other hand by the appellants, the chil-
dren of Solomon P. and Mary E. Engler, under the declara-
tion of trust in their favor, signed by one David Roop in the
capacity of trustee, and also under certain letters of the set-
tlor showing the intention on his part to create the trust and
the execution thereof.

The declaration of trust upon which the claim of the appellants partly rests is in writing and is in the following language :

*"Melville,* Oct. 14, 1884.

"This is to certify that I have received from Samuel Engler transferred in my name, the following Mobile and Ohio First mortgage R. R. bonds No. 6485, 6486 and 6487 of $1,000 face value each. And one bond No. 724 of $500 face value, coupons attached at 6 per cent, beginning with Dec. 1, 1884, to be held in trust for children of S. P. and Mary E. Engler. The interest collected to be remitted to Samuel Engler. The above conditions to be observed and carried out until otherwise ordered and directed."

$3,500—in all.

(Signed) DAVID ROOP."

This paper was delivered by David Roop, the trustee on the 14th of October, 1884, to Mary E. Engler, the mother of the appellants, and has been in her possession since that date.

The record shows that by an agreement filed in the case on the 23rd of January, 1902, it is admitted that the bonds mentioned in this paper were transferred on the 21st of July, 1884, from a certain Evan Haines to David Roop, and subsequently on May 4th, 1893, were transferred from David Roop to bearer. It further appears from a letter, dated Paris, January 5th, 1884, written by Samuel Engler to Solomon P. Engler that the former had directed this to be done. He states among other things in this letter "I have given orders to E. Haines to hand over the remainder of what he had to David Roop, if he does so at once, all is passed and he shall be liberally dealt with and good feeling." And in a letter to Mrs. Mary E. Engler, dated October 3rd, 1892, in referring to these bonds he says, "Now I come to the point in which I propose to write you. David Roop has still in hand $3,500 of Mobile and Ohio Rail Road first mortgage bonds. They give $210 per year interest this I must have until my death after that *the interest may be paid to you,* but I must be as-

sured that ———— your life and that of your children ————
how can you ———— promises above would be ———— like
that of Sol and your mother ————."

David Roop, the trustee, died in January, 1895, and the
bonds were in his possession at the time of his death which
took place shortly after the death of Samuel Engler. The
fund now in dispute was recovered from the estate of Roop,
the trustee, in settlement of these bonds which were held by
him, and from a decree of the Circuit Court of Baltimore City,
directing the fund to be paid to the executor of Samuel Engler,
this appeal has been taken..

The question then in the case comes to this. Do the facts
relied upon by the appellants create and establish such a trust
as a Court of equity will enforce in their behalf. In the case
of *Lloyd* v. *Brooks*, 34 Md. 27, this Court held that the ques-
tion in such cases is one of fact ; has there been a gift or not,
or has there been a declaration of trust or not, and in deter-
mining this, the acts of the party, as well as his intention in
doing those acts, must be considered and regarded by the
Court.

In the case now under consideration we have the declara-
tion of trust in writing and signed by the trustee. The paper
distinctly states that the trustee has received from the settlor,
transferred in his name, certain coupon bonds, to be held in
trust for the children of S. P. and Mary E. Engler. The in-
terest was to be collected and to be remitted to the settlor.
These conditions were to be observed and carried out until
otherwise ordered and directed. It thus appears that the sub-
ject-matter of the trust is clearly stated, the benficiaries under
it are definitely named, and the condition upon which the
property was to be held is distinctly set out. The bonds
were delivered and transferred to the trustee for the benefit of
the *cestui que trustent* reserving the interest thereon, by the
direction of the settlor and in the trustee's possession from
July 31st, 1884, to the date of his death, in January, 1894.
There is not a particle of proof to show that the settlor or
donor ever attempted to disturb, change, annul or revoke by

will or otherwise, the trust which is set up in this case. On the contrary, it is shown by his [letter to Mrs. Mary E. Engler as late as October 3rd, 1892, that he knew that his direction to Haines to deliver and transfer the bonds to the trustees had been carried out because he there states, "that David Roop, the trustee, has still in hand $3,500 of Mobile and Ohio R. R. first mortgage bonds," the bonds from which the fund in the case is derived.

But it is argued upon the part of the appellee, that the written declarations of the trustee and the letters of the settlor, Engler, in this case, do not establish or create such a valid and effectual trust, as is capable of being enforced.

A large number of cases have been cited to sustain this position but without stopping to state the distinctions on which they rest we think they are clearly distinguishable from this. We do not mean to distrust in the least, nor do we overlook the well settled principles of law, established by those cases, but it will be found upon their examination that the facts stated, upon which they were decided, differ very materially from those here. It was said by this Court in the case of *Albert* v. *Winn*, 5 Md. 73, that the seventh, eighth and ninth sections of the Statute of Frauds relate expressly to trusts; the first of which provides that a declaration or creation of trust of lands shall be manifested or proved by some writing signed by the party enabled to declare the trust. In consequence of these terms, trusts not constituted but merely proved by some writing, have been considered sufficiently established although the ninth section of the Act directs that all grants and assignments of any trusts shall be in writing.

In the case of *Smith & Barber* v. *Darby*, 39 Md. 268, it is thus stated: "It is a well established principle that a parol declaration of a trust of personal estate is sufficient * * . It was not necessary to the validity of the trust that he should have signed his name to the note, or notified the children of the existence of the trust or have delivered the note to them, or to some person for them." Other authorities to the same effect are the cases of *Cox* v. *Sprigg*, 6 Md. 274; *Gardiner* v. *Merritt*, 32

Md. 83; *Rieff* v. *Horst*, 52 Md. 268; *Gordon* v. *Small*, 53 Md. 551; *Taylor* v. *Henry*, 48 Md. 560; *Milholland* v. *Whalen*, 89 Md. 213; *Newkirke* v. *Place*, 47 N. J. Equity, 486; *Tanner* v. *Skinner*, 11 Bush, 120; *Gardiner* v. *Rowe*, 5 Russ. 258; *Fiste* v. *Hale*, 3 Vesey, 737; *Bates* v. *Hurd*, 65 Maine, 180.

Mr. Pomeroy, in his work upon Equity Jurisprudence, 2nd vol. sec. 1007, says that when the trust is not created in and by the instrument of conveyance, it may be sufficiently declared and evidenced by the trustee to whom the land is conveyed, or who becomes the holder of the legal titles ; and this may be done by a writing executed simultaneously with or subsequent to the conveyance, and such writing may be of a most informal nature. The Statute of Frauds does not extend to trusts of personalty ; and such trusts may therefore be created, declared, or admitted verbally; and proved by parol evidence ; although the consensus of authorities demands clear and unequivocal evidence.

In this case, we have the written declaration of the trustee executed as to the terms of the trust about the time and subsequent to the delivery of the bonds, a declaration against his interest to impress a trust upon the property and also the various letters of the settlor showing a clear intent on his part to create a trust and the execution of the trust in behalf of the appellants.

Besides this, it appears from the record that Mrs. Engler had a conversation with Roop, the trustee, about these identical bonds after the death of Mr. Samuel Engler, and he admitted that he had the bonds in his possession and would turn them over now as he did not want the care of them any longer. In *Milholland* v. *Whalen*, 89 Md. 213, this Court declared that when a person intends to give property to another and vest that property in trustees and declares a trust upon it in favor of the object of his bounty, by such acts the gift is perfected and the author of the trust loses all dominion over it, and in such gifts of mere personal estate, the declaration of trust may be made and proved by parol, without the aid of writing, and when the Court considers that there has been a

declaration of trust, it is a trust executed and the Court will enforce it with or without consideration.

We are therefore of the opinion after a careful examination of the case that the Circuit Court of Baltimore City committed an error in directing the fund in dispute to be paid to Fielder C. Slingluff, executor of Samuel Engler, deceased, and its decree of the 21st of February, 1902, will be reversed. The cause will be remanded to the end that a decree may be passed in accordance with this opinion, ordering the fund to be paid, as directed by the declaration of trust, the costs to be paid out of the fund.

> *Decree reversed, cause remanded, the*
> *costs to be paid out of the trust fund.*

(Decided June 18th, 1902.)