LORA LEE GEOGHEGAN, CLAUDIA MAUDE DIGGS
AND CLINTON E. CORTLAND

*vs.*

ETHEL CLAUDE CORTLAND SMITH AND EUGENE
G. SMITH.

*Declarations of trust: to be enforced in equity; proof to be
clear and convincing; intent; memorandum in
old Account book.*

Declarations of trust may be enforced by a court of equity; but in such cases the proofs to establish such a trust must be clear and convincing, both as to the intent and the execution of the intent of the settlor, to be a complete and binding trust settlement.                                                   p. 539

In this case, it was held that a memorandum of trust, found in an old account book of the testator, was never treated by him to be a final and effectual distribution of his property, or that he intended to surrender his control and dominion over it during his life; and a bill asking to enforce the trust was held to be properly dismissed.                                          p. 541

*Decided January 15th, 1919.*

Appeal from the Circuit Court of Baltimore City. (SOPER, C. J.)

The following Exhibit "A" is directed by the Court to be inserted in the report of this case:

*Defendant's Exhibit "A".*

Deed in Trust from James Cortland to James Wakefield Cortland, Laura C. Norton and Alleyn Child—3rd May

1900—accepted by J. W. C. 5th May 1900—Situate in District 18 County of Greene—State Tenn. James H. Rumbough & wife Carrie F. 19th Apr. 1870—Reg. 19th Apr/'79 Book 37—page 190 and noted in Book 3—9. M. J. Fagg & Wm. F. Ray—13 Sept—1870—Book 37 page 353—noted Book 3 page 13 Uriah Matthews & wife Eliza J. 24th March 1871—Book 37—page 593—Noted Book 3—19, Equal parts to L. C. Norton, and J. W. C., sole use, until death of James C. in case of death all to survivor. 1/7 to C. W. C. after death of J. C. or sell as a whole giving C. W. C. 1/7 if deemed advisable.

Should C. W. C. die without lawful issue, then in trust for his sisters—Claudia—Lora—Ethel in equal shares—or their children—PER STIRPES and not per capita.

| $28,000—1/7 | 4,000 | |
| 24,000—3/8 | 9,000 | L. C. N. |
| Absolutely 3/8 | 9,000 | J. W. C. |
| 3/8 | 6,000 | others |

to be divided into four equal parts—one to S. C. C. during his natural life, after in equal parts to his daughters or to such of them as are then living, during term of natural life —sole & separate use, child or children PER STIRPES and not per capita. The other 3 parts of 2/8 part net income in equal shares to the before mentioned daughters of S. C. C. during term natural lives or such of them as are then living.

All subject to the approval of Court of Legal Jurisdiction. May revoke all in case of death of L. C. N. & J. W. C.

Trust 3rd May—1900—L. C. N. J. W. C. & A. C. Gay St., Deed from Wm. F. Porter, Trustee, to J. C. 12th July 1895—Liber J. B. No. 1569, folio 287 and Deed from JWC & others 19th Nov—96 recorded or intended to be recorded —Also—4 lots—Liber G. R. No. 706—folio 514 in Block 1289 on the Index Plate in the Office of the Clerk of Superior Court—Balto—Subject to the mortgage on 1st part to

L. C. N. & J. W. C.—to L. C. N. during her natural life. Afterwards undivided half of Gay to S. C. C. during natural life—afterwards to the 4 children of S. C. C.—natural lives, then *per stirpes*—Asquith—net income and profits one undivided half to children of S. C. C.

Half of all of above to J. W. C. absolutely—

All subject to Court of Legal Jurisdiction.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Edgar Allan Poe* (with a brief by *Bartlett, Poe & Claggett*), for the appellants.

*William L. Marbury* and *Charles McHenry Howard,* for the appellees.

BRISCOE, J., delivered the opinion of the Court.

The essential facts upon which the decision of this case must turn are undisputed, and it is conceded that the single question in the case is whether or not certain entries or memoranda, found in an old memorandum book, or diary, in the hand-writing of James Cortland, deceased, the grandfather of the parties here in interest, constitute a valid and enforceable declaration, in trust, of real estate.

The plaintiffs seek, by a bill in equity, to construe and establish this memoranda as a valid declaration of trust against the property set out in the bill, for their benefit as against the title held by the defendant, derived from and through her uncle and grandfather.

The case was heard by the Court below upon bill, answer, exhibits and an agreed statement of facts, and from a decree of Court, dated the 10th of June, 1918, dismissing the plaintiffs' bill, this appeal has been taken.

A brief review of the controlling facts will be necessary for a clear understanding of the conclusion we have reached in the case, although many of them will be found stated in recent will cases in this Court, where the parties on this record were also parties in those contests. *Thomas* v. *Cortland,* 121 Md. 670; *Smith* v. *Diggs,* 128 Md. 394; *Diggs* v. *Smith,* 130 Md. 101.

James Cortland, of Baltimore City, died in the year 1910, leaving a last will and testament dated the 1st day of June, 1908, by which he devised and bequeathed the bulk of his estate, valued at about $85,000.00, to his son, James Wakefield Cortland.

Mrs. Laura C. Norton, a daughter of the testator, predeceased her father, and died without issue in 1909.

Samuel Clinton Cortland, a son of the testator, died in 1904, leaving four children, who are the parties to this controversy.

James Wakefield Cortland, a son, died in 1914, unmarried and without issue.

The will of James Cortland was contested by the present appellants, and upon a second trial was set aside by the verdict of a jury. A compromise agreement however was subsequently entered into, whereby it appears that the caveats to the will were dismissed, and under the settlement each of the appellants and the appellee received nine-tenths of 'one-eighth of the value of the estate, real and personal, of which their grandfather died seized and possessed, being the same amount that each would have received if their grandfather had died intestate, less a one-tenth.

James Wakefield Cortland, the uncle of the appellants and appellee, died in May, 1914, leaving a last will and testament, by which he left the principal part of his estate to the appellee. This will was also contested by the appellants, but the will was sustained and his estate was distributed according to its provisions, each of the appellants receiving a legacy of five hundred dollars, which they accepted.

The alleged declaration of trust is dated the 3rd of May, 1900, and was found among other papers in the safe deposit box of James Wakefield Cortland, who had been the executor and residuary legatee, under his father's will, shortly after his death in May, 1914.

A transcript of the alleged trust settlement here in question is filed in the case as Exhibit A, and will be set out by the reporter in his report of the case.

The alleged declaration of trust is admitted to be in the handwriting of the settlor and purports on its face to be a deed of trust of certain real estate covered by it, and then owned by the settlor, with James Wakefield Cortland, Laura C. Norton and Alleyn Child, as supposed trustees. The object of the trust settlement, assuming it to be valid, was a voluntary deed of trust of real estate without consideration for the benefit of the children and grandchildren of the settlor, upon the terms and trusts declared by the entries in the paper itself and where the legal title did not pass.

There are a number of formal objections urged in the case, to the validity of the paper or instrument relied upon as constituting a valid and effectual declaration of trust, but apart from these we are all of opinion that the appellants have failed to meet the burden of proof required of them to show that the settlor intended it to be a final and binding trust settlement, and the Court below was clearly right in dismissing the bill.

While the enforcement of declarations of trusts are within the jurisdiction of courts of equity, it is a familiar rule, settled by all the authorities, that the proof to establish a trust of the character, we are here dealing with, must be clear and convincing both as to the intent and the execution of the intent by the settlor and it must clearly appear that the declaration of trust was intended by the settlor to be a complete and binding trust settlement. *Carson* v. *Phelps,* 40 Md. 73; *Snader* v. *Slingluff,* 95 Md. 364; *Austin* v. *Central Savings*

*Bank*, 126 Md. 144; *Venables Law of Real Property*, 131; 39 *Cyc.* 84.

In *Lloyd* v. *Brooks,* 34 Md. 27, the language of LORD CHANCELLOR CRANWORTH, in *Jones* v. *Lock*, Law Rep. 1 Chan. Appeals, 28, is thus quoted as applicable to cases of this character, "the question in each case is one of fact; has there been a gift or not, or has there been a declaration of trust"? and this Court said in determining this, the acts of the party as well as his intention in doing those acts must be considered and regarded by the Court." *Swan* v. *Frick,* 34 Md. 139; *Taylor* v. *Henry,* 48 Md. 550; *Seabrook* v. *Grimes,* 107 Md. 410; *Ruhe* v. *Ruhe,* 113 Md. 600.

In the present case we find no such clear and satisfactory evidence as would justify a Court of Equity in holding that the alleged trust settlement was intended by the settlor to be a final and binding declaration of trust or that would bring it within the requirements of the rules of law to establish a valid and enforceable trust.

On the contrary there is evidence to show an absence of any intent on the part of the settlor in this case of making a final settlement in trust of his property as of the 3rd of May, 1900.

Under the agreed statement of facts in the record it is admitted that at the date of the alleged declaration of trust the Gay street property mentioned in the bill of complaint was subject to the mortgage to the Eutaw Savings Bank of Baltimore for six thousand dollars; which was subsequently, on August 30th, 1906, paid off by James Courtland and released by said bank. The real estate firm of Alexander Yearley & Son had been for long time prior to the date of the alleged declaration of trust the agents of James Cortland in charge of his property in Baltimore City, including the warehouse on Gay street, and continued to be his agent for that purpose up to the time of his death; and it is admitted that no change was made in the manner in which they accounted for and remitted to him the rentals of the properties at or after the date of the alleged declaration of trust; but that they con-

tinued to make such remittances by checks payable to his order merely and were never advised of any change in the ownership of the property, and that the income from the property so remitted to James Cortland was by him applied to his own purposes and after the date of the alleged declaration of trust in the same manner as he had done before.

Besides this it appears that in 1906 James Cortland sold the 6,000 acres of land except 400 acres, situate in Green County, Tennessee, to The Patterson Lumber Company, and by his will made in 1908, he devised the Gay street property "as my fee simple property No. 113 North Gay street." These particular transactions and the will itself in 1908 are in absolute disregard of a supposed trust settlement such as the one sought to be established in this. His conduct and dealings with the subject matter of the trust all go to show that he never intended the memoranda found in the book or diary to be a final and effective disposition of his property and that he intended to surrender his control and dominion over the property during his life. Apart then from the other objections apparent from the face of the instrument itself we hold that there is an insufficiency of proof to establish such a valid and binding declaration of trust as a Court of Equity should enforce, and that the decree of the Court below, dismissing the bill of complaint in this case should be affirmed.

*Decree affirmed, with costs.*