ISAIAH GARDNER, Guardian, and others, *vs.* SUSANNA MERRITT.

## *What constitutes a Gift.*

A grand-mother, from time to time, during a period of five years, deposited various sums of money in the Savings Bank of Baltimore, to the credit of five grand-children, the accounts in the bank being in the name of each, as a minor, and the deposits made subject to her order, or that of her daughter. She also kept an account in bank in her own name, the deposits being subject to the like order. About the time the grand-mother began to make these deposits to the credit of her grand-children, she declared that "she was going to put the money in bank for the children." Under the by-laws of the Savings Bank, guardians could deposit for the benefit of their wards, and parents for their children; and if desired at the time of deposit, subject the same to the control of such guardian or parent. The grand-mother died, and shortly after her death, the daughter, who was the executrix of her mother, obtained from bank all the money that had been deposited to the credit of the grand-children, and administered it as a part of the estate of her mother. Upon a bill filed in the name of the grand-children against the daughter, to obtain an account of the moneys so withdrawn by her, it was HELD:

That the moneys deposited by the grand-mother were perfected gifts, which she had no design to countermand; and the donees were entitled to the several amounts which stood to their credit in bank, when withdrawn by the defendant, with interest thereon from the date of the withdrawal

APPEAL from the Circuit Court for Anne Arundel County, in Equity.

The cause was argued before BARTOL, C. J., STEWART, MAULSBY, GRASON, MILLER and ALVEY, J.

*B. C. Presstman* and *S. Teackle Wallis*, for the appellants.

The Circuit Court erred in supposing the grand-mother had not given the money to the children because she reserved control over it, instead of considering whether that control was reserved for their benefit and not hers. Infants cannot check out money, and yet no prudent person would put money in bank for an infant without giving some one the power to check it out for the infant's protection in case of danger, or the offer of a better investment. *Adams' Equity*, 80; *Cox vs. Sprigg*, 6 *Md.*, 274; 2 *Redf. on Wills*, 317, 318; *Hills vs. Hills*, 8 *Mees. & Wels.*, 401; *Edwards vs. Jones*, 13 *Cond. Eng. Ch.*, 377; *Mory vs. Michael*, 18 *Md.*, 227; *Kilpin vs. Kilpin*, 1 *Mylne & Keene*, 520; *Fortescue vs. Barnett*, 8 *Cond. Eng. Ch.*, 208.

The defendant's receipting, as for the infants, though it did not bind the mother's estate as an estoppel, was evidence nevertheless, and conclusive that the defendant knew and recognized the money as the children's, and that her right to check it out (and she was but the mother's agent) was given by her mother for the children's benefit. *Mangum vs. Webster*, 7 *Gill*, 82; *Dent vs. Dent*, 3 *Gill*, 482; 1 *Greenleaf on Ev.*, 179.

*Thomas Rowland* and *E. G. Kilbourn*, for the appellee.

It is admitted that Mrs. Merritt was the owner of the money when she made the deposit. The *legal ownership* clearly continued with her up to the time of her death, notwithstanding the deposit, because the money was held by the bank as bailee, subject to her order or that of her designated agent, and the bank could have lawfully paid it to no one else. At her death, then the legal ownership necessarily passed to her executrix. So much for the *legal title.*

Now, if the *equitable title* to this money ever vested in the grand-children of Mrs. Merritt, it must have been by some

act of her's, consummated in her lifetime or by a testamentary disposition, taking effect at her death. The appellants do not claim under the will, and their title depends therefore upon the answer which may be given to a single question: Did Mrs. Merritt, by the deposits which she made, divest herself of the equitable title to this money, and constitute herself a trustee for her grand-children?

If she did not, she died the legal and equitable owner of this money, the legal title to which is now vested in her executrix, and the equitable title in her residuary legatees.

The deposits made by Mrs. Merritt in the names of her grand-children, did not change the legal or equitable ownership of the fund in controversy. *Pennington vs. Gittings,* 2 *G. & J.,* 208; *Nickerson vs. Nickerson,* 28 *Md.,* 327; *Hitch vs. Davis,* 3 *Md. Ch. Dec.,* 266; *Thompson vs. Dorsey,* 4 *Md. Ch. Dec.,* 149; *Cox vs. Sprigg,* 6 *Md.,* 274.

MAULSBY, J., delivered the opinion of the Court.

Susanna A. Merritt, the grand-mother of the appellants, (complainants below,) John G. Gardner, Mary V. Livingston, (formerly Gardner,) Frances C. Gardner, Helen M. Gardner and Emma S. Gardner, deposited during her life, sundry sums of money in the Savings Bank of Baltimore, to the credit of these complainants, having caused accounts to be opened in the Bank in the name of each of them, as a minor, and containing immediately after the name of the infant, the words, " subject to the order of Susanna A. Merritt or Susanna Merritt." To these accounts she commenced on September 4th, 1860, to make deposits and continued during the years 1861, 1862, 1863, 1864 and 1865, to November 13th, depositing equal sums, within a small fraction, to each account, and altogether to the amount, with the interest accrued and credited, when due, to each, of thirteen hundred and three dollars and five cents.

In December, 1865, she died, and after her death all these moneys were withdrawn from the bank by the appellee, and

subsequently were claimed by her as belonging to the estate of Susanna A. Merritt.

The question is, whether these moneys became, when deposited by the grandmother, perfected gifts to the grandchildren, to whose account she had deposited them, or whether they remained, after the deposits, the property of the grandmother—whether the gifts were perfected, or whether the facts manifest an *intention* to give in future—whether the *acts* of making the deposits, under all the proof in the cause, divested the grandmother of her title to the moneys, and vested the same in the infants.

The Vice Chancellor, in the case of *Hughes vs. Stubbs*, 1 *Hare*, 479, says: "The result of the cases is, that the Court looks into the nature of the transaction, and determines, from the nature of the transaction, what the effect of it shall be in divesting the owner of the property to which it relates." Before the moneys were deposited, they were the property of Mrs. Merritt. The proof is, that some time in or about the date at which she commenced to make these deposits, the date not definitely fixed by the witness, she declared that she "was going to put the money in bank for the children." She did put money in bank, and caused it, when she so put it, to be entered to the credits or accounts of the several children. The third section of the charter of the Savings Bank, and the first and seventh of the by-laws, contained in the record, serve to show the character and intent of the acts of deposit by Mrs. Merritt. The corporation was empowered to receive from any person or persons any deposits of money, and to invest the same in public stocks or other securities, and to allow interest, and to divide surplus profits. It was organized and incorporated for the purpose of receiving such small sums of money as are the profits of industry and economy, or legacies, or *donations* to widows, *children,* and others, &c.

Guardians may deposit for the benefit of their wards, and parents for the benefit of their children, and, if desired at the time of deposit, subject the same to the control of such guar-

dian or parent. Mrs. Merritt must be presumed to have had knowledge of these provisions. She acted on them by depositing money for *the benefit of* her grand-children, and subjected the same to the *order* of herself, or of her daughter, the appellee. It is maintained by the appellee, that the moneys deposited did not become, thereby, the property of the several infants, in whose names, or to whose accounts they were deposited, because they remained, by force of the words, "subject to the order of Susanna A. Merritt or Susanna Merritt," the property of the donor; that these words explained and limited the acts of deposit to the effect of a declaration of an intention to give in future. In the absence of those words, it would be hardly contended that the declaration of an *intention* to give, followed by actual delivery of the subject matter of the intended gift, to a bailee, *for the benefit* of the donee, did not constitute a perfected gift. A gift is inoperative without delivery. To be valid, it "can have no reference to the future, but must go into immediate and absolute effect. To the perfection of a parol gift of a chattel, delivery is essential, and without actual delivery no title passes." *Nickerson vs. Nickerson,* 28 *Md.,* 332. The delivery may be to the donee, or trustee, or guardian acting for the donee, or to any bailee of the donee. All these conditions were met in this case. The money was delivered by the donor to the bank, as bailee of the infants, by the direction of the donor, that it should be entered to their credit in accounts standing open in their names. The words which are supposed to explain and qualify these acts of the donor are not, in our opinion, justly liable to that interpretation, but are to be interpreted in reference to the language of the by-law referred to. Guardians and parents may deposit *for the benefit of their wards and children,* and subject the deposits to the control of the guardians or parents. The deposits, when made by Mrs. Merritt, were *for the benefit* of her grand-children. The delivery to the bank *for the benefit of* the grand-children, was a perfected gift to them, and the

control, by *her* or *her daughter*, retained, was such control as is contemplated by the by-law—a control *for the benefit* of those to whose use, *or whose benefit*, the money was delivered —such control as might be necessary to the protection of the interest of the donees, and of the same nature as a guardian might exercise for the benefit of his ward, and not such control as would pertain to a continuing legal power and dominion over it—which would leave the donor a *locus penitentiæ.*

This construction of the effect of the words in question, is sustained by a review of all the facts in the case. It is in proof, that in 1858, Mrs. Merritt made a will; she devised all her property to her living children, the mother of the complainants being then dead, and excluded from all benefit of her estate these children of her dead daughter. The estate, which she so devised, had been given to her by all her children, including the then living mother of the complainants, by deed in 1846. In 1860, she commenced to deposit small sums, the products of the very property conveyed to her, in the Savings Bank, in the name, and to the account, of each of these excluded grand-children. Prior to that time, she had been in the habit of giving to the mother, during her life, or to the father of these children, twenty-five dollars per month. She declared her intention to stop giving it to the father, and to put it in the bank for the children. There is proof that she had stopped giving it to the father, and had invested it in bank for the children—that she wished them, and not their father, to have it. It appears, from the accounts in evidence, that she deposited, to the account of each of the five children, five dollars per month, uniformly, in the earlier periods of the deposits, and generally at other times, though sometimes increasing and sometimes diminishing the monthly deposit.

There is in the record no evidence of any intent on the part of Mrs. Merritt to do any future act touching this money, after that of depositing it in the Savings Bank, for and in the names of her grand-children. That she did not

intend the act of deposit as a delivery for the use of the infants, when done, but that she then intended a future perfection of the gift, is an inference sought to be drawn by the appellee's counsel from the words, "subject to order," &c., only. During the same period, when she was making these deposits in the names of her grand-children, she was also making similar deposits in the same bank, in her own name: that is, she was depositing to separate accounts in the name of each of the grand-children, and at the same time to a separate account in her own name, which had been opened long before, in 1856, and was continued until her death. If she intended that all the moneys were her own, and deposited to her own credit, it is hard to conceive her purpose in requiring five accounts to be kept, one in the name of each of the infants, and a sixth in her own name. It is argued that her purpose was to indicate thereby an intent to make future gifts of the moneys to the children, but there is no proof on which the argument can rest. The effect of the deposits was either to make the money deposited the right of the infant in whose name it was deposited, or the effect of the words "subject to her order" was to retain to her the legal power and dominion over it, and to continue it her own, as absolutely as if she had not caused it to be deposited in the name of the infants, and the multiplicity of accounts was without any meaning.

"If the donor has perfected his gift in the way which he intended, so that there is nothing left for him to do, and nothing which he has authority to countermand, the donee's right is enforcible as a trust." *Adams' Equity*, (*marg.*,) 79.

"In every case the general purpose and intention of the donor, and not the use of one particular term or another, will decide the question of whether a party does or does not take in a fiduciary character." *Hill on Trustees*, (*marg.*,) 66.

We think, in this case, that the donor had perfected her gifts, and had no design to countermand them, and that the right of the donees is enforcible, as a trust, against this defendant, who, in the words of the five distinct receipts signed by

her, received from the Savings Bank the moneys *for* the complainants, naming each; who made some of the deposits at the request of her mother, who is shown by the proof to have been fully cognizant of all her mother's acts and intentions in this respect, and who signed the receipt for the money standing to the separate account of her mother, as executrix.

The cases in 2 *Gill & John.*, 208; 3 *Md. Ch. Dec.*, 266; 4 *Md. Ch. Dec.*, 149, and 6 *Md.*, 274, are all cases in which the gifts had not been perfected, and, in that respect, distinguishable from this.

The view which we take of this case is supported by those of LORD BROUGHAM in *Kilpin vs. Kilpin* and *Kilpin vs. Lamb,* 1 *Mylne & Keene,* 520, (7 *Cond Eng. Ch. R.,* 150.)

We have not adverted to some of the questions discussed by counsel, in their able arguments, particularly to the competency of the evidence of Mr. Baldwin, which was excepted to, because we have not found it to be necessary to the decision of the cause.

We are of opinion that the complainants are entitled to a decree for the several amounts of money which the appellee withdrew from the Savings Bank of Baltimore, and which stood to the credit of each at the time of such withdrawal, and to interest thereon from the 21st December, 1865, the date of the withdrawal.

The decree will, therefore, be reversed, and the cause remanded, that a decree may be passed in conformity with the opinion of this Court.

*Decree reversed and cause remanded.*

(Decided 1st February, 1870.)