JOHN W. STONE, Administrator,

*vs.*

THE NATIONAL CITY BANK OF BALTIMORE.

*Trusts: creation of—; control of personalty during life of party
creating trust.   Deposits in banks.*

Where the author of a gift retains the legal dominion over
the subject in himself, but fully and completely declares him-
self to be the trustee of the property for the purposes indicated,
he will be treated as trustee, and the object of his bounty will be
given the benefit of the trust.                              p. 235

In such cases, the declaration of trust is considered in equity
as equivalent to an actual transfer of the legal interest.   p. 235

If the transaction by which the trust is  created is complete,
it will not be treated as invalid for want of consideration.

p. 235

Whether or not a trust has been created in any given case is
a question of intention.   No particular words are necessary,
but the trust relation will be implied whenever it appears that
such was the intention.                                     p. 238

Where the subject of a declaration of trust is personalty, it
may be proved by parol.                 ·                   p. 238

A deposit in bank by the depositor of funds belonging to him, under the names of himself and another, "in trust for both, joint owners, subject to the order of" the depositor, "the balance at the death of either to go to the survivor," accompanied by declarations and instructions indicating an intention to create a trust, will effectuate the intention, and upon the death of the depositor the balance of the funds becomes the property of the other party so named. pp. 231-238

*Decided May 5th, 1915.*

Appeal from Circuit Court No. 2 of Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*J. Dawson Williams* and *Wm. Milnes Maloy* (with whom was *George M. Brady* on the brief), for the appellant.

*Raymond S. Williams* (with whom were *Crain & Hershey* and *Albert E. Donaldson* on the brief), for the appellee.

BURKE, J., delivered the opinion of the Court.

On the 22nd day of September, 1911, Mrs. Sarah Hunter, a resident of Fredericksburg, Virginia, deposited with the National City Bank of Baltimore the sum of six thousand dollars. The deposit was in the form following:

> *The National City Bank of Baltimore.*
> Dr.  In Account With
> Sarah Hunter, or Sara R. Heineman.
> 1911—Sept. 22—Cash $6,000  In Trust for both, joint owners, subject to the order of Sarah Hunter, the balance at death of either to go to the survivor.

The sum thus deposited was the individual money of
Sarah Hunter. No part of the principal of the sum depos-
ited was withdrawn, but interest on the same was paid to
Mrs. Hunter to April 1, 1913. Mrs. Hunter died intestate
in April, 1913, and letters of administration upon her estate
were granted by the proper court in the State of Virginia to
J. Conway Chichester, who notified the bank that he claimed
the fund as the property of the estate of Mrs. Hunter, de-
ceased. Sarah R. Heineman also notified the bank that the
fund belonged to her. In view of these conflicting claims,
the bank filed a bill in the Circuit Court No. 2 of Baltimore
City against J. Conway Chichester, administrator, and Sarah
R. Heineman, in which it prayed that said defendants be
required to interplead and adjust their several demands and
claims, and expressed its willingness to pay said sum to such
defendant as might be adjudged entitled thereto.

On January 3, 1914, the Court decreed that the parties
defendant interplead, and further ordered that the plaintiff
be at liberty to retain out of said fund the sum of two hun-
dred dollars as a fee to its solicitors, and that in interplead-
ing Sarah R. Heineman should be designated as plaintiff
and J. Conway Chichester, administrator, as defendant.

John W. Stone was appointed by the Orphans' Court of
Baltimore City administrator of the estate of Mrs. Hunter,
and as such administrator, upon his petition, was authorized
to intervene and assert whatever rights he might have to
the fund. Sarah R. Heineman, designated as plaintiff in
the decree of January 3, 1914, asserted her right to said
money, and alleged that she is now the absolute owner of the
fund, and that no other person or persons had any interest
therein; and prayed that a decree be passed declaring the
fund to be her property and payable to her. By an order
passed July 30, 1914, J. Conway Chichester, administrator,
was stricken from the record as a party defendant, and John
W. Stone, administrator of Sarah Hunter, was substituted
in his stead as a party defendant, with leave to file an answer,
which he subsequently did, and in which he set forth the

grounds upon which he claimed the money as the property of the estate of Mrs. Hunter.

Quite a large volume of testimony was taken by the parties, and the Court, on January 8, 1915, adjudged and decreed that the fund in dispute belonged to and was the absolute property of Sarah R. Heineman, and ordered and directed that it be paid to her with the accumulated interest, less the deduction, as set forth in the decree of interpleader, and that the costs of the proceedings to the date of the decree be paid out of the fund. From this decree John W. Stone, administrator, has prosecuted this appeal.

An effort was made on behalf of the appellant to show that at the time the deposit was made and for a long time prior thereto Mrs. Hunter was of unsound mind, and was under the control and dominion of the plaintiff, but the evidence wholly fails to support these contentions. On the contrary, the overwhelming weight of the evidence, of intelligent and disinterested witnesses, shows that Mrs. Hunter was of sound mind and capable of attending to, and did in fact attend to, all her business affairs, and it is not shown that the deposit was induced by the undue influence of the plaintiff.

The only real question in the case is, whether, under the facts in evidence, the deposit constituted a valid declaration of trust as to the six thousand dollars. If it did, it is conceded that the money now belongs to the plaintiff and that the decree should be affirmed. The law upon the subject is well settled in this State. It is stated as follows in *Milholland* v. *Whalen,* 89 Md. 212: "Where a person intends to give property to another, and vests that property in trustees, and declares a trust upon it in favor of the object of his bounty, by such acts the gift is perfected, and the author of the trust loses all dominion over it; and in such gifts of mere personal estate, the declaration of trust may be made and proved by parol, without the aid of writing. And the cases go to the length of maintaining that where the author of the gift retains the legal dominion over the subject of

the gift in himself, but fully and completely declares himself to be trustee of the property for the purposes indicated there, he will be treated as trustee, and the object of his bounty will be given the benefit of the trust. In all such cases the declaration of trust is considered in a court of equity as equivalent to an actual transfer of the legal interest in a court of law; and, if the transaction by which the trust is created be complete, it will not be treated as invalid for want of consideration. *Taylor* v. *Henry & Bruscup,* 48 Md. 559; *Kilpin* v. *Kilpin,* 1 M. & K. 520; *McFadden* v. *Jenkyns,* 1 Phill. Ch. 153; *Cox* v. *Sprigg,* 6 Md. 274; *Smith & Barber* v. *Darby,* 39 Md. 268. In *Jones* v. *Lock,* L. R. 1 Ch. 25, LORD CRANWORTH observed: 'If a man chooses to give away anything which passes by delivery, he may do so, and there is no doubt that, in the absence of fraud, a parol declaration of trust may be perfectly good, even though it be voluntary. If I give any chattel, that of course passes by delivery; and if I expressly or impliedly say I constitute myself trustee of such and such personal property for a person, that is a trust executed, and this Court will enforce it, in the absence of fraud, even in favor of a volunteer. * * * The authorities all turn upon the question whether what took place was a declaration of trust or merely an imperfect attempt to make a legal transfer of the property. In the latter case the Court will afford no assistance to volunteers; but when the Court considers that there has been a declaration of trust, it is a trust executed, and the Court will enforce it whether with or without consideration. * * * It is the donor's act which originates the trust, and it is the intention with which he does the act that is material. The entry, unexplained, is a sufficient declaration of trust, because it indicates an intention to establish a trust; but this may be rebutted. Possession by the depositor of the bankbook in no way detracts from the force of the entry; because it is a possession by the trustee and does not denote that no beneficial interest had been given to the *cestui que trust;* *Minor* v. *Rogers,* 40 Conn. 512. If the delivery of the money

to a bank to be placed to the credit of the depositor in trust for another, and the declaration of the trust, as evidenced by the entry made pursuant to the settlor's instructions, constitute and evidence a valid trust, then no act of the depositor in subsequently withdrawing the money can affect the rights of the *cestui que trust, unless the power to withdraw be reserved.*"

In *Littig* v. *Mt. Calvary Church*, 101 Md. 494, the terms of the deposit indicated an intention on the part of Miss Littig to establish a trust in favor of the church, but this intention was attempted to be rebutted by the testimony of the officers of the bank to the effect "that Miss Littig wanted to leave some money so that the Mt. Calvary Church would get it after her death, but that she did not wish to give the church the money during her life for fear that she might need it herself; that her intention was if she did not draw the money during her lifetime for her own use, that it should go to the church after her death, and that she intended to retain control of it for her own use as long as she lived." The Court held that this testimony did not rebut the presumption of a trust arising from the entry, but merely showed that she intended to reserve a power of revocation.

The circumstances under which the deposit was made leave no room for doubt as to the intention of Mrs. Hunter with respect to the fund. She was the grandmother of Sarah R. Heineman, and the testimony shows that she was devotedly attached to her. Mrs. Heineman was born in the home of her grandparents, was educated by them, and lived with them until her marriage. After her marriage she visited them frequently, and after the death of her grandfather, in 1900, Mrs. Hunter spent much of her time with her in Baltimore and also visited her in New York. Mrs. Heineman exhibited great consideration and affection for her grandmother, and appears to have been uniformly kind and attentive to her. The relations between Mrs. Hunter and her children were not so pleasant, due to causes which it is not necessary to discuss. Some years before the deposit she

had made a will in which she left the greater part of her estate to Mrs. Heineman. She destroyed this will before the deposit was made. When urged by Miss Welch, a witness in the case, to make another will, and provide for the younger Mrs. Hunter, a widow and daughter-in-law, who had nursed her and rendered her services, she refused to do so, saying: "They will only break it, because they have been fighting all their lives."

In September, 1911, Mrs. Hunter and Mrs. Heineman were guests at the home of Mr. and Mrs. Harry M. Mason in Baltimore. Mr. Mason was then the cashier of the National City Bank. The circumstances under which the deposit was made are given as follows in his testimony: "During the evening Mrs. Hunter asked me if she could deposit a sum of money in my bank under certain conditions, and I told her she could, and which I did afterwards, and after it was completed she went on to New York. Mrs. Hunter asked me if she could put money in our bank under the conditions that she could have the control of it during her life, and at her death it would go to Mrs. Heineman, or at Mrs. Heineman's death it would still be hers, but she wanted the control of it while she lived, and I told her she could, and fixed it that way, as I supposed, according to the custom of our bank.

"Q. After having this conversation with her what did you then do?

"A. After I told her she could do it she had a check drawn on some bank in Fredericksburg for six thousand dollars. She never told me how much she wanted to put there; I did not know. She had the check for six thousand dollars drawn and handed it to me that evening. I told her after I went to the office I would have the money deposited and on my return I would give her the pass-book and would have to have her sign a signature card, which I brought home to her and which she signed, and I took the book and signature card back to the bank. That is the only transaction I ever had with her."

He delivered the bank book to Mrs. Hunter, and she and Mrs. Heineman signed the signature card. Mrs. Mason testified that after the deposit had been made Mrs. Hunter "was delighted and willing to die then, she said, because she thought she had fixed Mrs. Heineman to some extent the way her grandfather would have loved to have had her fixed, by leaving her this six thousand dollars so no one else could get hold of it but her."

These facts, which are undisputed, bring the case directly within the principles laid down in *Milholland* v. *Whalen* and *Littig* v. *Mt. Calvary Church, supra,* and establish a valid trust as to the six thousand dollars deposit, with a power of withdrawal or reservation expressly reserved to Mrs. Hunter. Whether or not a trust has been created in any given case is, in the last analysis, a question of *intention*. No particular words are necessary to create a trust, and trust relations will be implied when it appears that such was the intention. The subject of the deposit being personalty, the trust may be created and proved by parol. The form of the entry, the instructions of Mrs. Hunter, and the parol evidence establish the trust, and effectuates the clear intention of Mrs. Hunter with respect to the disposition of the fund.

> *Decree affirmed, the costs in this Court to be paid by the appellant.*