HENRY P. MUSHAW, ET. AL. *v.* JULIA A. MUSHAW

[No. 14, October Term, 1944.]

*Decided November 1, 1944.*

512

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, BAILEY, CAPPER, and HENDERSON, JJ.

*G. Elbert Marshall* and *Eldridge Hood Young* for the appellants.

*V. Calvin Trice* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

Julia A. Mushaw, widow of Thomas Mushaw, deceased, filed a bill of complaint in the Circuit Court for Talbot County, in equity, against the executors of her husband and four of his children, Henry P. Mushaw, Winnie Lee Schuyler, Alfonso Mushaw and Mary Harrison (children of a former marriage), for the purpose of having four bank accounts declared to be part of his estate. The Farmers & Merchants' Bank was joined as a party defendant. One of these accounts was opened in accordance with directions given by the decedent to the president of the bank, in the following form:

"Thomas Mushaw & Henry P. Mushaw

"In trust for Thomas Mushaw and Henry P. Mushaw, subject only to order of Thomas Mushaw upon death of either to belong to and be subject to order of survivor."

The amount in this account was $9,103.08. Accounts in identical form and amount were opened for each of the three other children. The appeal is from a decree granting the relief prayed, after hearing upon amended bill and answer and testimony taken.

Thomas Mushaw settled in the Trappe District of Talbot County more than forty-seven years ago. He married and raised a family of six children, all of whom are now of age, and all but one of whom reside in the county. On January 2, 1936, he married for the third time. Upon his death on January 21, 1943, he was about seventy-five years of age, but apparently still active in business; at any rate he had served as a director of the Farmers & Merchants' Bank for the past twelve

years, and attended a directors' meeting on January 6, 1943. On January 12, 1943, he had an attack, with pain in the chest and some difficulty in breathing, which was diagnosed on January 15th, as a coronary thrombosis.

Mr. Mushaw, on at least two occasions in 1942, after directors' meetings, spoke to Mr. Henry, the president ·of the bank, "about wanting to fix his Bank accounts," which stood in his name alone. About three months before his death he discussed the matter with Mr. Henry in his office, in the presence of his daughter, Mrs. Schuyler. He inquired if he could open accounts for four of his children "so he would retain control of it as long as he lived and, at his death, it belonged to the other person named in the account." Mr. Henry informed him that this could be accomplished through the use of trust provisions. "I told him how it would be set up and I took his son, Henry, as an illustration. I said 'it will be in trust for you and for your son, Henry, subject only to your order and, upon the death of you, subject to the order of Henry, or in the event of the death of either, then to the survivor'."

On Saturday, January 16, 1943, Mr. Henry received a message from Mr. Henry P. Mushaw that his father was ill and wished to see him about his bank accounts. Accordingly, Mr. Henry went to Mr. Mushaw's home near Trappe, about noon of that day. Before leaving the bank he ascertained the amounts of Mr. Mushaw's saving and checking accounts and took some blank checks with him. Upon arrival, he went in to see Mr. Mushaw, who was in bed, and at his request, told the nurse to go out and close the door. Mr. Mushaw then told him he wanted to change his accounts into the names of four of his children, dividing the money equally. He gave Mr. Henry a list of the names, and told him to get his savings bank book from his wife. Mr. Henry then prepared five checks and Mr. Mushaw signed them. The total amount of the deposits was $36,502.34, but the five checks totaled only $36,412.34. Mr. Henry took these checks to the branch at Trappe and had four ac-

counts opened, three for $9,103.08 and one for $9,-103.10 in the form heretofore stated.

Mr. Henry testified that he was not representing Mr. Mushaw as attorney in this transaction but in his capacity as president of the bank. Mr. Henry had, however, prepared a will for Mr. Mushaw in 1935, prior to his remarriage, in which he divided his estate equally. between the same four of his children, leaving only $100 bequests to the other two. This will was subsequently probated. During all of the conversations concerning the bank accounts, Mr. Mushaw never mentioned his surviving wife.

Mrs. Mushaw, the widow, testified that she learned of the changes in the bank accounts on Monday, the 18th, when she went to the bank. On Tuesday morning she told her husband she had to have some money, and he said, "Well, you will have to write a check and tell Mr. Leonard I say cash it for you." She said: "Well, you got no money in the Bank. It has been taken out; you have signed checks." He said: "No, I haven't signed anything." She said: "No, you haven't a nickel in the Bank." Whereupon he made an effort to get up, but collapsed. This incident was corroborated by the nurse. Mrs. Mushaw testified that she called Mr. Henry on the phone, and he came to the house on Wednesday afternoon, to see Mr. Mushaw; that Mr. Mushaw told Mr. Henry "he wanted to fix him up a check," whereupon Mr. Henry said: "He is not fit to transact business," and left the room. Mr. Henry's version of this incident is that Mrs. Mushaw called him Wednesday morning, and he went down that same afternoon about 5 P. M. Mrs. Mushaw told him on the 'phone that Mr. Mushaw was "perfectly able to transact business," but when he arrived Mr. Mushaw did not know him, and the nurse, Mrs. Dulin, said, "He is certainly not in any condition" to transact business. This version was fully corroborated by Mrs. Dulin.

Aside from the sums withdrawn from the two accounts of the decedent in the Farmers & Merchants' Bank, he

left no estate, except the $90 balance in one account, some shares of bank stock, a government bond of $100, the house and lot near Trappe where he resided, and some personal effects. The widow renounced and claimed her statutory one-third in this property.

Questions as to the mental capacity of the decedent, and as to undue influence practiced upon him, were abandoned at the trial, and are not pressed on appeal.

There is no evidence in the record of any valuable consideration passing to Mr. Mushaw in connection with the transfers. There is evidence of a close family relationship, and that the children worked for him around the place prior to their emancipation and his remarriage. It seems clear that he wished his favorite children to take his estate, both from his will and the subsequent transfers, without regard to the claims of his wife. On the other hand there is no evidence of an estrangement between the decedent and his wife. She had been employed in Cambridge for some time before his last illness, but there is no evidence that he objected to this, and they occupied the same bedroom down to the time of his death.

The transfers are attacked upon two grounds: that there was no intention on the part of the decedent to create a trust, and that the retention of a power of withdrawal by the decedent shows a lack of good faith and constituted a fraud upon the marital rights of the widow.

It has been clearly established in Maryland since the decision in *Milholland v. Whalen,* 89 Md. 212, 43 A. 43, that a trust provision may be used as an alternative to delivery of the subject-matter of a gift. Retention of a right of withdrawal is in legal contemplation no more than a power to revoke the trust, even though this right is reserved to the depositor alone. *Bollack v. Bollack,* 169 Md. 407, 182 A. 317; *Stone v. National City Bank,* 126 Md. 231, 94 A. 657; and *Littig v. Mt. Calvary Church,* 101 Md. 494, 61 A. 635. These cases also establish the proposition that a trust in personalty may be created and proved by parol.

516

While the more usual form describes the beneficiaries as joint owners, and permits withdrawal by either party, this is not essential to the creation of a trust. We think the evidence establishes an intention to create a trust in the case at bar. The testimony of Mr. Henry that he explained and illustrated the trust provision is uncontradicted, and the fact that the decedent had been a bank director for twelve years suggests that he was not wholly unfamiliar with transactions of the kind. The evidence as to the incident leading up to the second visit of Mr. Henry on January 20th does not negative an intention on the part of Mr. Mushaw to create trusts for his children, although it does underscore his unwillingness to relinquish control over the accounts during his lifetime.

The chief contention in the case, and the one upon which the Court below based its decision, was that the trusts were not made in good faith, but for the explicit or implicit purpose of defrauding the widow of her rights in the funds at his death.

The case of *Sturgis v. Citizens' Nat. Bank*, 152 Md. 654, 137 A. 378, is closely in point. There the husband, who had been estranged from his wife, returned to her about five years before his death. There were no children or descendants, and the husband's next of kin were two grandnieces. Shortly after his return, he made a will leaving his wife one-third of his estate, if she survived him, and two-thirds to the grandnieces. On the following day, upon the advice of bank officials, he withdrew $20,000 from his account of some $40,000 and made two $10,000 deposits in the form of trusts in favor of his two grandnieces, reserving the right to withdraw it himself alone. Some time later the entries were changed to permit withdrawal by either party. Upon his death, the widow renounced and sought to set aside the transfers, claiming one-half of each account, as well as one half of the estate, on the ground of fraud. In addition to the two accounts of $10,000 each, the decedent left an estate worth in excess of $40,000.

It thus appeared that the widow stood to gain $10,000 if the gifts were set aside, but in any event she would

receive $20,000 amounting to one-third of the total estate including the deposits. The court held that fraud was not proven. In referring to the line of cases holding that the disposition must be complete, without reservation of dominion or control by the settlor, the court said: "Perhaps it is well to reiterate that the references in these cases to reservations of right or dominion in the husband do not mean that such reservations to him as trustee prevent a gift being complete as to the wife; they might properly be considered in connection with other facts to determine whether there has been a fraudulent use of the form of gift, but, as has been seen, they are consistent with a fully completed gift."

The question to be determined is, therefore, whether the use of the form was fraudulent in the case at bar. The salient fact is that the widow is completely stripped of her marital rights in the personal property of her husband. This may be a matter of degree, but it appears to be the only basis on which the decisions can be reconciled. In *Collins v. Collins*, 98 Md. 473, 483, 57 A. 597, 601, this Court said: "Nothing that we have said, however, is to be understood as going beyond the case before us, or as laying down the rule more broadly than to protect the wife against a voluntary conveyance by the husband of all his estate. * * * In cases where * * * conveyance embraces only a part of the husband's estate, or where provision is made out of his estate for children of a former marriage, the questions thus presented are left open for future consideration as they may arise."

In *Jaworski v. Wisniewski*, 149 Md. 109, 131 A. 40, where the avowed purpose was to transfer property so that the spouse would get nothing, the deeds were set aside. See also the comment upon this decision in *Bestry v. Dorn*, 180 Md. 42, 46, 22 A. 2d 552.

In *Brown v. Fidelity Trust Co.*, 126 Md. 175, 94 A. 523, where this court upheld a trust created by a wife who retained a life-estate, with a power of revocation, the court said there was no evidence of fraud upon the legal

rights of the husband. The deed provided for a life-estate to the husband of the entire residue, and the court stressed the reasonableness of its provisions.

In the case of *Bullen v. Safe Deposit & Trust Co.*, 177 Md. 271, 9 A. 2d 581, in holding that a wife had no statutory interest in her husband's life insurance merely by reason of his retaining the right to change the beneficiary, and the right to exercise complete dominion and control over it, the Court found that the facts would not warrant an inference of fraud, because of the large amount of property that the widow received from the estate.

The somewhat exceptional nature of a trust in bank deposits, frequently referred to as a "tentative trust," has been frequently pointed out. Mr. Scott, in his work on *Trusts* (1939 Ed), Sec. 57, notes that a trust of a saving-bank deposit is upheld by a majority of the courts which have passed upon the matter, as not testamentary in spite of the almost unlimited power of control reserved by the settlor. See also the article in 3 Md. L. R., p. 109, and Section 58, *Restatement of the Law of Trusts.* However, Mr. Scott (Sec. 58.5) observes: "It would seem that a husband should not be permitted to deprive his widow of her distributive share of his estate by reducing his estate to cash and depositing it in savings banks and creating tentative trusts for third persons." And see *Newman v. Dore*, 275 N. Y. 371, 9 N. E. 2d 966; *Krause v. Krause*, 285 N. Y. 27, 32 N. E. 2d 779; and *Mitchell v. Mitchell*, 177 Misc. 1050, 32 N. Y. S. 2d 839. In all of these cases the distinction is drawn between real and illusory transfers. In the case of *Martin v. Martin*, 282 Ky. 411, 138 S. W. 2d 509, the Kentucky Court of Appeals considered a case quite similar to the case at bar and set the transfer aside on the ground of fraud. Other decisons are collected in the notes 64 A. L. R. 466, and 112 A. L. R. 649.

The exceptional nature of trusts in bank deposits does not imply that they are on a different footing from other transfers *inter vivos* where husband and wife are con-

cerned. That is made abundantly clear by the citation of authority in *Sturgis v. Citizens Nat. Bank,* supra, particularly the cases of *Hays v. Henry,* 1 Md. Ch. 337; *Dunnock v. Dunnock,* 3 Md. Ch. 140; and *Rabbitt v. Gaither,* 67 Md. 94, 104, 8 A. 744, none of which involved trusts in bank deposits, and in all of which the necessity for relinquishment of control was stressed, in order to bar the widow's claim to personal property disposed of by the husband in his lifetime. A husband has an undoubted right to transfer his personal property during his lifetime, with or without consideration, but where he does not part with dominion over the property transferred, the issue of good faith is immediately raised. Courts have always been alert to scrutinize transactions of a party who stands in a confidential relation to another.

The dominion retained in the case at bar was as complete as though the entries had never been changed. The children had no right to draw any part of the funds until after their father's death, whereas he could at any time set the transaction aside in whole or in part. While this does not affect the legal validity of the form of gift, it is a significant fact to be considered in passing upon the good faith of a husband in relation to the marital rights of a wife. When coupled with the facts that these funds constituted substantially all of his estate, and that the only possible reason for changing the entries was to effect a transfer to the persons named in the will, unencumbered by the right of renunciation, we agree with the conclusion of the court below that the transfers were colorable and constituted a fraud upon the marital rights of the widow.

*Decree affirmed, with costs to the appellee.*