## BIERAU, Administratrix *v.* BOHEMIAN BUILDING, LOAN AND SAVINGS ASSOCIATION, "SLAVIE" OF BALTIMORE CITY

[No. 14, October Term, 1954.]

*Decided November 16, 1954.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Max Sokol* and *Melvin J. Sykes,* with whom were *Charles J. Novak* and *Dickerson, Nice and Sokol,* on the brief, for appellant.

*Albert G. Aaron,* with whom were *Samuel J. Aaron* and *Howard L. Aaron* on the brief for appellee, Louis A. Cohen, Guardian Ad Liteim; *Fred J. Van Slyke* and *Daniel S. Sullivan, Jr.,* on the brief for appellee, Bohemian Building, Loan and Savings Association.

HAMMOND, J., delivered the opinion of the Court.

This appeal calls upon us to decide whether a decedent effectively created a trust during his lifetime as to a free share account in a building association. If he did, the money is the property of his two minor daughters, born out of wedlock; if not, it is a part of his estate. The Chancellor, in a proceeding for declaratory relief, held that a trust had been created.

The appellant, the administratrix of the estate of Joseph E. Filip, the decedent, says first, that unless the account was in the nature of a savings bank deposit, subject to the rules which govern such deposits, it is an asset of the estate because the evidence shows that the changes in the account amounted to a testamentary dis-

position which violates the statute of wills; and second, that the evidence fails to sustain the appellee's burden of proving a valid *inter vivos* trust of the savings bank type, effective before death. The thrust of the second point is sought to be driven home by an argument that savings bank trusts are essentially testamentary in nature because of the complete control reserved, which permits revocation, in whole or in part, at any time or from time to time, and, therefore, in view of the real chance of fraud after death, the courts should refuse to effectuate informal attempts to transfer in this manner funds on deposit, and should require literal compliance with the formalities and terms which have come to be recognized.

We think that there is no necessity to decide what the result would be if the account involved were not to be governed by the rules which apply to savings type accounts. The courts hold that there is no rational basis for distinguishing free share accounts in building and loan associations from a savings account where trusts are concerned, despite the fact that there is not, in the first case, the debtor and creditor relationship which exists between the bank and the depositor. In *Wetzel v. Collin*, 170 Md. 383, this Court, in discussing an account in a building association in the trust form generally employed by savings banks, said: "The account was entered as a subscription to eight shares of stock of the association, which would be fully paid up when the deposits or payments amounted to $1,000.00. To all intents and purposes it was as much a savings account as if made in a savings bank." The Court then went on to decide that the usual trust form was effective to cause the surviving beneficiary to become the absolute owner of all of the money on deposit. Other Maryland cases which have treated accounts in building associations as if they were in banks, are: *Gimbel v. Gimbel*, 148 Md. 182; *Kozlowaka v. Napierkowski*, 165 Md. 620. The rule is the same generally. *Zimmerman v. Nauhauser* (N. J.) 183 A. 820; *Evinger v. MacDougall* (Cal.) 82 P. 2d 194; *Fleck v. Baldwin* (Tex.) 172 S. W. 2d 975.

The appellant's argument, presented with skillful analysis and with a basic appeal to reason and logic, that the strict requirements of the statute of wills and the reasons which brought those requirements into being, dictate that *inter vivos* trusts of deposits of money must be scrutinized with the greatest strictness, and denied effect, unless all the formalities are complied with to the letter, comes far too late in the life of the law, at least in Maryland. A number of States have refused to hold such trusts valid or enforceable, and others have limited their effect. In Maryland, where the requisite intent and execution of that intent are found from the facts, they have long been given full recognition and effect.

The case turns then on whether Filip intended to, and did, transfer present equitable interests to his daughters or whether he intended the money on deposit to belong, only after his death, to them. If there was an intention to transfer an interest during his lifetime, shown clearly by the evidence, this intent will not be frustrated because the requirements of the statute of wills were not complied with. Lord Eldon, in *Ex-parte Pye v. Ex-parte Dubost,* 18 Vesey 145, said that where a decedent during his lifetime, had declared himself to be trustee of certain stock, it formed no part of his estate. This case is commented on in *Cox v. Sprigg,* 6 Md. 274. In *Gardner v. Merritt,* 32 Md. 78, 83, deposits made by a grandmother in the name of her grandchildren, subject to the order of the grandmother or her daughter, the mother of the children, were held to be the property of the infants. The Court said: "* * * that the right of the donees is enforceable, as a trust, against this defendant * * *" (the mother) and added: " 'In every case the general purpose and intention of the donor, and not the use of one particular term or another, will decide the question of whether a party does or does not take in a fiduciary character.' " In *Smith v. Darby,* 39 Md. 268, it was held that a note to the order of the decedent was held by him as trustee for his grandchildren because of

his parol declaration to that effect, which was held to be sufficient since the trust was a personal estate. In *Taylor v. Henry*, 48 Md. 550, 560, the Court refused to recognize a joint deposit in a savings bank as a completed gift or as a trust, but said: "* * * where a person intends to give property to another, and vests that property in trustees, and declares a trust upon it in favor of the object of his bounty, by such acts, the gift is perfected, and the author of the trust loses all dominion over it; and in such gift of mere personal estate, the declaration of trust may be made and proved by parol, without the aid of writing. * * * In all such cases, the declaration of trust is considered in a court of equity as equivalent to an actual transfer of the legal interest in a court of law; and, if the transaction by which the trust is created be complete, it will not be treated as invalid for want of consideration. * * * For the purpose of establishing such trust, however, the evidence must be clear and unmistakable both of the intent and the execution of that intent." Those principles were recognized as applicable to trusts of savings accounts and the rules which govern such trusts were delineated with clarity and exactness in *Milholland v. Whalen*, 89 Md. 212. They have been reiterated many, many times in decisions of this Court and may be stated as follows: the usual entry "A in trust for A and B, joint owners, balance at the death of either to belong to the survivor" is, unexplained, a sufficient declaration of trust, since it indicates an intention to establish the trust, but this may be rebutted.[1] The mere use of the word "trustee" is not of itself sufficient to create a trust. If there was no intention to create a trust, none will be held to exist no matter what words are used.[2] Yet, if there exists in

1. *Milholland v Whalen*, 89 Md. 212, 216; *Littig v. Mt. Calvary Church*, 101 Md. 494; *Mathias v. Fowler*, 124 Md. 655; *Stone v. National City Bank of Baltimore*, 126 Md. 231; *Gimbel v. Gimbel*, 148 Md. 182; *Foschia v. Foschia*, 158 Md. 69; *McDevit v. Sponseller*, 160 Md. 497; *Bollack v. Bollack*, 169 Md. 407; *Ragan v. Kelly*, 180 Md. 324; *Mushaw v. Mushaw*, 183 Md. 511; *Bradford v. Eutaw Savings Bank*, 186 Md. 127; *Collier v. Benjes*, 195 Md. 168; *Hancock v. Savings Bank of Baltimore*, 199 Md. 163; *Whittington v. Whittington*, 205 Md. 1, 106 A. 2d 72.

2. *Colmary v. Fanning*, 124 Md. 548; *Austin v. Central Savings Bank*, 126 Md. 139; *Pearre v. Grossnickle*, 139 Md. 274.

the mind of the depositor an intent that he or some other shall be trustee and he expresses that intent, although the words "in trust" or "trustee" are not used, the intention will prevail and the trust will be declared to have been created. In every case, the real purpose and intention of the donor, and not the particular use of one particular term or another, will decide the question of whether there was a trust.[3]

A savings bank trust may be created by parol and may be proven by parol.[4] The creator of the trust may reserve the right to withdraw part or all of the deposit at any time, or from time to time. A withdrawal amounts, in legal contemplation, to no more than the exercise of the power of revocation which will not affect the validity of the trust. The right to withdraw may be given to the trustee-beneficiary and the other beneficiary separately, or jointly, or may be reserved to the creator alone, and there will be no difference in legal result.[5]

If written evidence is relied on to show the intent to create the trust, its expression may take varied forms and be found in various entries. There may be no entry in the passbook but an appropriate entry on the records of the depository, and this will not be fatal to the validity of the trust. *Sturgis v. Citizens National Bank,* 152 Md. 654. There may be an entry indicating a trust in the passbook but not on the signature card or ledger account. Again, the intention will prevail. *Whittington v. Whittington,* 205 Md. 1, 106 A. 2d 72. If written instructions to the bank show an intention that a trust be created, one will be found and enforced, although the bank had

---

3. *Gardner v Merritt,* 32 Md. 78; *Taylor v. Henry,* 48 Md. 550; *Baker v. Baker,* 123 Md. 32, 41; *Mathias v. Fowler,* 124 Md. 655, 665; *Stone v. National City Bank of Baltimore,* 126 Md. 231, 238; *Foschia v. Foschia,* 158 Md. 69, 71; *McDevit v. Sponseller,* 160 Md. 497, 505; *Kozlowska v. Napierkowski,* 165 Md. 620; *Bradford v. Eutaw Savings Bank of Baltimore,* 186 Md. 127; *Collier v. Benjes,* 195 Md. 168.

4. *Milholland v. Whalen,* 89 Md. 212; *Stone v. National City Bank of Baltimore,* 126 Md. 231, 238; *Pope v. Safe Dep. & Tr. Co.,* 163 Md. 239, 249; *Mushaw v. Mushaw,* 183 Md. 511, 515; *Taylor v. Henry,* 48 Md. 550; *Sturgis v. Citizens National Bank of Pocomoke City,* 152 Md. 654.

5. *Milholland v. Whalen,* 89 Md. 212; *Stone v. National City Bank of Baltimore,* 126 Md. 231; *Ghingher v. Fanseen,* 166 Md. 519; *Wetzel v. Collin,* 170 Md. 383, 386; *Hopkins Place Savings Bank v. Holzer,* 175 Md. 481; *Bollack v. Bollack,* 169 Md. 407; *Mushaw v. Mushaw,* 183 Md. 511, 515, 516.

refused to honor the instructions and no entry showing a trust is in the bankbook or the bank records. *Hancock v. Savings Bank of Baltimore,* 199 Md. 163. The trustee may be either the creator-beneficiary or another. In *Milholland v. Whalen, supra,* the Court said at page 215 of 89 Md.: "The legal title may be transmitted to a third person, or it may be retained by the donor, but in either case the equitable title has gone from him, and unless the declaration of trust contains a power of revocation it leaves him powerless to extinguish the trust." In *Bauer v. Harman,* 161 Md. 131, where a mother opened an account in her name, in trust for self and daughter, joint owners, subject to the order of either, balance at death to belong to the survivor, testimony showed that the account had been opened in this form and a Liberty Bond delivered to the daughter upon the express trust that the daughter would attend to the details of the investment, collect the income and pay it to the mother for life, and upon the mother's death, distribute the fund as she had been directed. The trust was enforced. See also *Price v. Price,* 162 Md. 656, at 662, 663, where a parol trust made by a father to his son as trustee, was upheld. Other jurisdictions sustain the view that one other than the depositor may be trustee or co-trustee of a savings bank type trust. In *Hellman v. McWilliams,* Supreme Ct. of Calif., 1886, 11 P. 659, a depositor assigned to one Hellman the amount due him from a bank, to be held in trust for the minor children of the depositor, who reserved to himself the right to withdraw such sums as he might deem proper for his own use. The assignment and the agreement were verbal. The trustee collected the money under a power of attorney. The Court held that there was shown, with reasonable certainty, an intent to create a trust for the minor children and that nothing in the arrangement vitiated its validity. See also *Bank of American National Trust & Savings Association v. Hazelbud* (Calif.) 68 P. 2d 385, where under its customary form, the bank was made trustee of a savings account. The depositor reserved the right

to withdraw and the balance at death was to go to his sister. The trust was enforced. To the same effect is *Falcone v. Palotta*, 29 N. Y. S. 2d 918, Affd. 29 N. Y. S. 2nd 719. In *Davis v. Ney* 125 Mass. 590 (1878), a depositor in a savings bank assigned her deposits to the treasurer of the bank so as to give him title to the funds. The transfer was upon oral agreement that the treasurer should pay her, during life, such sums as she wanted and upon her death, should pay the balance over to her son. Pursuant to this agreement, the treasurer paid her considerable sums and at her death, paid the balance to the son. It was argued that this arrangement violated the statute of wills and was void. The Court held that a trust had been created, that parol evidence was admissible to establish the fact that the assignment, while absolute in its terms,: "was in reality upon certain trusts or agreements, which, if proved, a court of equity might compel him to execute." The Court continued that while there was no power as such to revoke: "* * * the donor was entitled by the agreement to such portion of the fund as she required during her life. Such a provision, like a power of revocation, is not inconsistent with the creation of a valid trust."

The fact that the trust form may be used to enable payment of bills or for convenience of withdrawal, may, or may not, as the creator intended in fact, limit the terms of the trust. The power to withdraw for the payment of bills may be the sole purpose of a trust, or may indicate only an agency, or may be merely incidental to the real and broader purposes. In *Ragan v. Kelly*, 180 Md. 324, it was found that the trust was limited to the specific purpose of paying bills, so that it ended with the death of the maker. So, too, in *Coburn v. Shilling*, 138 Md. 177. However, in *Hancock v. Savings Bank of Baltimore, supra,* it was determined that the amount in the account was far more than was necessary for any immediate hospital or doctor bills, and there was a lack of evidence that the transfer was made only for the purpose of paying bills. It was pointed out that the

creator of the trust may have wanted the medical and hospital expenses paid out of the account and the beneficiary may have so understood, and the holding was: this does not effect the final disposition of the account, and the testimony does not indicate any results different from that which are written into the records. That funeral expenses are to be paid from a trust fund has been held not to render it testamentary. *Brown v. Fidelity Trust Co.*, 126 Md. 175, 178.

Joseph E. Filip employed one Ellen Dernetz as a maid. She is the mother of two daughters, Mary, fifteen, and Margaret, thirteen. When the younger child was about two years old, Ellen Dernetz married and at that time, she told Filip that he was the father of the two girls. He apparently accepted this as a fact. In 1944, he gave a $500.00 down payment on a house in Chapel Street in which the Dernetz family lived, and he also contributed much of the balance due on the mortgage. He saw the children frequently, bought them clothes and gifts and left them fully paid endowment insurance policies in the amount of $250.00 each, as well as $400.00 on deposit in another building association, not involved in these proceedings. In January, 1950, he told a neighbor of Ellen Dernetz that the girls were his and that he was taking care of them until they were old enough to take care of themselves. About October, 1950, Filip went to the Bohemian Building, Loan and Savings Association "Slavie", where he had an account, to see Ferdinand Kalas, the secretary, who was a friend of forty years standing. He then told him for the first time, as Kalas puts it: "* * * that he was responsible for bringing these children in the world, and he wants to see that these children be protected, that they never have any want, and all of the money left to them from him, and he asked me if I would handle the money for him." There was some discussion of a will but apparently, after talking to Kalas, Filip decided to rely on the building association account as a means of transferring the money to the children, because he told Kalas that he wanted him:

"* * * to handle all of his money and all his affairs, * * *" and delivered to Kalas his papers and the two insurance policies, as well as the passbook in the building association. The will was never again mentioned after this was agreed to as the procedure to be followed. Kalas says: "The man had confidence in me, after so many years, he put all these papers in my trust, to give it to the children." He was asked if the money was to be for the children after Filip died, and he answered: "After he would die, and also while he would be living, I had the right to withdraw the money and give it to him when he couldn't write, or something like that." When he was asked if he could withdraw all of the money, he said: "No, this money was only for the children." He was then again asked if this was only after Filip died, and his answer was: "No, all through his life, if he couldn't write or anything like that, that he was sick, that I should take care of him, as long as he's living, pay all of his funeral expenses, and what money would be left over, to see that it's given to his children." Filip could withdraw the money at any time if he so desired. Kalas described the arrangement thus: "As long as he lived that he would have the right to withdraw and do with the money as he wants, but if something happened to him and he died that I should carry his children and pay them every month so much for their living expenses up to the age of eighteen." Filip had accounts in various banks and building associations, which he withdrew and put in the one account here involved. Kalas' testimony as to this, is: "He told me he had money all around in different banks and building associations, and to make it easier for him and easier for me that he is going to bring all the money that he has in the Association gradually and put it in there so it would be all in *one trust account for the children.*" (Emphasis supplied) The witness said that as long as Filip was living, he could take the children's names off the book if he wished, and added: "Yes, and make anybody

trustee if he was not satisfied with my services or work * * *."

The written entries, which reflected the change in the account on the books of the association were these: the passbook, which had read that Joseph E. Filip is a member of the association, was changed to read:

"This certifies that
Joseph E. Filip and Ferdinand Kalas—
Executor
to Mary Dernetz Filip—
And Margaret Dernetz
His-nieces
is a member. * * *"

Filip signed a new signature card, as did Kalas. The association does not use printed signature cards but plain cards, on which are typed the name and address of the shareholder and any desired legend. The new signature card was typed and signed by both Filip and Kalas, either at the time of the original conversation or when a deposit was made in the next day or so, and read:

"Filip, Joseph E.          Ferdinand Kalas
733 N. Milton Avenue          Executor and Trustee For
   Margaret A. Marshall Phillip
   Mary E. Marshall Phillip   Minors
   2125 East Chase Street Baltimore 13 Md
      October 2nd 1950.
   This is to Authorize, Ferdinand Kalas
to deposit, Withdraw, and Hypothecate
My account No. 785- to pay all Just debts
and Necessary Expenses in Home or Hospital
also Funeral Expenses.

On a ledger sheet of the account, there was added the words, in pen and ink, to the heading "Joseph E. Filip": "And Ferdinand Kalas, Executor and Trustee to Mary Dernetz Filip and Margaret Dernetz".

The Chancellor found as a fact that it was the clear intention of the decedent to create a trust of the money on deposit, that the beneficiaries were definitely desig-

nated and that the terms of the trust were clear. He found that Filip and Kalas were trustees of the trust which was created, that it was for the benefit of Filip for life, in that he or Kalas for him could use so much as he needed for just debts and necessary expenses, with the daughters receiving what was left at Filip's death. We think the basic conclusions of the Chancellor to be right, although, as we see it, Kalas alone was the trustee of the trust, and its terms were that the trustee could expend funds on hand for Filip's just debts and necessary expenses during his lifetime and pay his funeral expenses at his death, and then was to provide for the needs of the children until they were eighteen, when they were to receive, respectively, whatever balance remained. In addition to his limited beneficial interest for life, Filip, as creator of the trust, reserved the right to withdraw at will, as is customary in savings bank type trusts—in other words, a term of the trust was the right to revoke. We agree with the Chancellor that legal title was transferred to Kalas and that the reserved limited beneficial life estate and the created beneficial remainder interests of the children were both present immediate interests. Nothing in the arrangement exceeds what the cases have held may be done, within the framework of a valid savings account type trust. The right to withdraw, as was said in *Mushaw v. Mushaw*, 183 Md. 511, amounts to no more than a power of revocation, in legal contemplation. This does not invalidate the trust. Clearly, the broader purposes of the trust were to enable Filip to keep available to himself as much of his money as he needed while he was living, and to insure that when he died, his children would have all that he had not had to use. The fact that he authorized Kalas, as trustee, to invade the trust fund for the payment of just debts, necessary bills and funeral expenses, was incidental to these real objectives, within the finding of *Hancock v. Savings Bank of Baltimore, supra.* Here, as there, the evidence fails to show that payment of the bills was the moving purpose of the creation of the trust.

The informal and inartificial nature of the records of the building association does not control. The Chancellor found that the parol evidence given by Kalas showed the creation and terms of the trust and the written evidence to be confirmatory. We think this view to be justified. Written entries do not create the trust, they are merely evidence it was created. Kalas clearly was not precise, either in his actions or in his expression of facts or ideas. The appellant shook him or confused him on cross-examination, but he was steadfast and unwaivering, and persuasively so, in his belief and declaration that he was the holder of the fund as trustee for his life-long friend and the children of that friend, and that this was at the direction of that friend. His testimony is replete with the words "trust" and "trustee". He had no interest in the children, except that Filip was their father. He had served without compensation and expected none. It is not charged that there is fraud or bad faith in the case, nor is there suggested any motive for Kalas to testify as he did, if it were not the truth. Other officials of the building association, as the testimony shows, were aware of the setup of the account. Filip, when he sent word to Kalas to make a withdrawal so he could buy shoes, said: "You've got the money." The appearance of the word "Executor" on the writings is explained by Kalas as a mistake on his part in expressing Filip's intention. He is sure that the word "trustee" was put on the ledger sheets and the signature cards before Filip's death and thinks that it was done either at the time of the first conversation or when the additional amounts were deposited, within a day or two, so that all funds would be in one trust account. He explains why the word "trustee" is in lighter type by saying it was typed with the typewriter in the front office, whereas the rest of the card was typed on the machine in his office.

We find that the Chancellor did not err in upholding the trust and his action will be affirmed.

*Decree affirmed, with costs.*